No. 1992
Second Circuit

F. H. ROSENBLATH v. SAM MARA-
BELLA

(March 11, 1926, Opinion and Decree)

*(Syllabus by the Court.)*

1. Louisiana Digest—Surveys and Sur-
veys—Par. 2, 7, 24.

Where a street is given as one of the
boundaries in the sale of a lot of
ground, the street as open and in ac-
tual at the time of the sale rather
than street as platted should be con-
sidered to be the one intended by the
parties to the sale.

2. Louisiana Digest—Surveyors and Sur-
veys—Par. 24; Acts—Par. 31.

A street mentioned as a boundary in a
sale must be understood to mean the
street as it actually exists on the
ground at the time; the apparent and
travelled street, and not the street as
it exists of record.

(9 Corpus Juris, 197; 198.)

3. Louisiana Digest—Sales—Par. 42, 63,
263.

The vendor is bound to explain himself
clearly as to the extent of his obliga-
tions, and obscure or ambiguous
clauses in a sale must be interpreted
against him.

(Civil Code, Art. 2474. Editor's note.)

Delogny vs. Mercer, 43 La. Ann. 205,
8 South. 903.

4. Louisiana Digest — Obligations — Par.
87.

When the intent is doubtful, the construc-
tion placed on the description by the
parties or by one of them with the
assent of the other, furnishes a rule
of interpretation.

Metcalf vs. Green, 140 La. 950, 74
South. 261.

Appeal from the First Judicial District
Court of Louisiana, Parish of Caddo, Hon.
T. F. Bell, Judge.

This is a suit to determine a boundary.
There was judgment for defendant and
plaintiff appealed.

Judgment affirmed.

George Thurber, of Shreveport, attorney
for plaintiff, appellant.

George G. Dimick, of Shreveport, attor-
ney for defendant, appellee.

### STATEMENT OF THE CASE

REYNOLDS, J.   Plaintiff sold defend-
ant a lot of ground situated in the City
of Shreveport described as follows:

"A lot or parcel of land being a por-
tion of the tract purchased by this vendor
from Thurman, as per act in conveyance
book 21, page 764, of the records of Caddo
parish, Louisiana, commencing on the
corner of Garden and Ignatius streets, run
thence west along Garden street forty
(40) feet, thence north to the south line
of the Talbot and Perrin subdivision,
thence east along said line forty (40) feet
to Ignatius street, thence south along
Ignatius street to place of beginning at
Garden and Ignatius streets."

Plaintiff contends that the southeast
corner of the lot he sold defendant is fif-
teen feet and six inches east of the point
claimed by defendant as his southeast
corner or at an iron pipe driven into the
ground as intended to mark the north side
of Garden street and the west side of Igna-
tius street.

On these issues the case went to trial
and there was judgment in favor of de-
fendant and the plaintiff has appealed.

### OPINION

Defendant contends that the southeast
corner of the property sold him by plain-
tiff is at a point pointed out to him by the
plaintiff at the time of the sale as the
southeast corner, which point is fifteen
feet and six inches west of the iron stob
above referred to, and fifteen feet and
nine inches south of another iron stob.

At the time of the sale by plaintiff to defendant there was a store building on the lot, the southeast corner of which building was at the point claimed by defendant as the southeast corner of the lot purchased by him. The iron stob above referred to is fifteen feet and six inches east of this point or about the middle of what at the time of the sale to defendant appeared on the ground to be Ignatius street, and as that street was then being actually used. When defendant bought the property from plaintiff it was enclosed by a fence.

If the point contended for by defendant be the west side of Ignatius street then that street had a width of thirty feet; but, if plaintiff's contention be correct, then the width of that street is reduced to fourteen feet and four inches.

The defendant, Sam Marabella, testified, pages 7-13:

"Q. When you bought this property from Mr. Rosenblath, was it fenced in at the time?
"A. Yes, sir.
"Q. Who built that fence?
"A. He did.
"Q. When you bought from him did he set out stakes showing the property that he had sold to you?
"A. Yes, sir.
"Q. Is the property which you are in possession—of which you are in possession on the corner of Garden and Ignatius streets as laid out on the ground?
"A. Yes, sir.
"Q. How long have those streets been used in their present situation?
"A. Since I have been there.
"Q. Ignatius street runs on the east side of your property?
"A. Yes, sir.
"Q. Right along the side of your store?
"A. Yes, sir.
"Q. Garden street is in front of your property?
"A. Yes, sir.
"Q. Your property is on the corner?
"A. Yes, sir.
"Q. Is the stake on the corner?

"A. On the corner and the other is forty feet away.
"Q. The stake is at the intersection of these streets?
"A. Yes, sir.
"Q. Then if you run forty feet (40) west of there does that reach the fence that Mr. Rosenblath had there?
"A. Yes, sir.

* * *

"Q. On the property that you have possession of?
"A. Yes, sir.

* * *

"Q. Who drove the iron stakes?
"A. He did.
"Q. Mr. Rosenblath?
"A. He did.
"Q. Did he drive them at the time that he sold the property to you?
"A. Yes, sir.
"Q. Drove them himself?
"A. Drove them himself; he drove them.
"Q. Now when you made these additions to your store and built your house in there did Mr. Rosenblath offer any objection?
"A. No sir, never said a thing.

* * *

"Q. You say that he drove the stakes and showed you where the stakes were?
"A. Yes, sir.
"Q. Were you there when he did it?
"A. Yes, sir.
"Q. You saw him do it?
"A. Certainly I did.

* * *

"Q. Do you know where the corner of Ignatius street and Garden street is—the corner stake?
"A. Yes, sir, right in that corner.
"Q. Well I am talking about the actual corner.
"A. The actual corner is right on the gallery.

* * *

"Q. Your buildings are more than forty feet (40) from that corner?
"A. No sir, exactly forty feet (40) where my line comes.

* * *

"Q. The stake that marks the corner of Ignatius and Garden streets is right at the corner of the front porch of your store?
"A. Yes, sir, right at this corner and my corner is right in the sidewalk."

Mrs. Sam Marabella, testified, pages 28-31:

"Q. Do you remember the time that your husband bought this piece of property from Mr. Rosenblath?
"A. Sure I remember it.
"Q. Were you present when they made their trade?
"A. Sure.
"Q. Did Mr. Rosenblath show your husband what property he was selling him?
"A. Sure.
"Q. What did he say to him?
"A. Show us how we stand now, give us forty feet just it stand now, show us where we stand now.
"Q. Put an iron stake to show where it was?
"A. Sure.

* * *

"Q. Did Mr. Rosenblath say whether or not he was selling you the same forty feet that he had been renting to you?
"A. Yes, sir.
"Q. Told you that?
"A. Yes, sir, told us that when he sold it, said sell you all this place like it stand.
"Q. That is according to the streets as they were on the ground?
"A. Yes, sir, that is the way it stand now.
"Q. And the corner of the streets as they appear on the ground?
"A. Yes, sir."

Veto Viola testified, page 32:

"Q. You know where the store is situated?
"A. Yes, sir.
"Q. Is that store situated on the corner of Garden and Ignatius streets?
"A. Yes, sir, right on the corner, post right there and I tie my horse many a time to that corner.
"Q. Post at the corner?
"A. Yes, sir.
"Q. Corner of the streets right there on the ground?
"A. Yes, sir."

Frank DeFatta testified, page 34:

"Q. Mr. Defatta are you familiar with the piece of property occupied by Mr. Marabella on Ignatius and Garden streets?
"A. Yes, sir.

* * *

"Q. Rented before he bought it?
"A. Yes, sir.
"Q. At the time he was renting it was it situated like it is at present?
"A. Yes, sir.
"Q. Fence on the west side?
"A. Yes, sir.
"Q. Ignatius street on the east side?
"A. Yes, sir.
"Q. How long had that been a street, how long had that street been there?
"A. Ever since I know.
"Q. Ever since you know?
"A. Yes, sir.
"Q. As much as twenty years?
"A. Yes, sir.

* * *

"Q. Did Mr. Rosenblath say that he was selling him the same property he was renting?
"A. Yes, sir.

* * *

"Q. Was the fence on the west side as it is at present?
"A. Yes, sir.
"Q. Same as it is at the present time?
"A. Yes, sir."

Sarah Taylor, testified, page 36:

"Q. Where do you live?
"A. I live on Ignatius street.
"Q. Anywhere near Mr. Sam Marabella's store?
"A. Yes, sir, I stays right back of it.
"Q. How long have you been living there?
"A. Well, as near as I can guess at it it has been about twenty-one years, I think about that long.
"Q. Where is Ignatius street?
"A. It is the street that runs down from Garden street down by Mr. Sam's store.
"Q. By his store?
"A. Yes, sir.
"Q. Right up against his store?
"A. Yes, sir; Judge Perrin said it was Ignatius street when I bought it.

* * *

"Q. Regular width street?
"A. Yes, sir, been in service ever since we bought out there."

Sam Liberto testified, page 39:

"Q. How long have you known the property that Sam Marabella is occupying?
"A. Well, I used to rent that place.
"Q. You used to rent that place?
"A. I rent from Mr. Rosenblath myself, I rent one year before Sam rent it; I sell my goods to Sam Marabella.
"Q. How long ago was that?
"A. Eighteen years ago.
"Q. Fenced in at that time?
"A. Yes, sir.
"Q. Was Ignatius street there at that time?
"A. Yes, sir.
"Q. Where is Ignatius street?
"A. By the side of the store.
"Q. By the side of the store?
"A. Yes, sir; Garden street front of the store.
"Q. Ignatius street is right up against the side of the store?
"A. Yes, sir.
"Q. Known as Ignatius street?
"A. Yes, sir, eighteen years ago that street was there.
"Q. Ignatius street is the principal street through there?
"A. Yes, sir, right by the side and Garden street is in the front.
"Q. That property now is just like it was before?
"A. Yes, sir, just like it was.
"Q. Fences and everything?
"A. Yes, sir."

From this evidence it is clear to us that it was plaintiff's intention to sell and defendant's intention to buy the forty feet front of ground on Garden street actually fenced in commencing at the iron post and measuring fifteen feet and nine inches southward and forty feet westward leaving thirty feet for the width of Ignatius street as that street then appeared on the ground and was actually used by the public at the time of the sale by plaintiff to

defendant; and from all the evidence we are convinced that the judgment of the lower court is correct, and it is therefore ordered, adjudged and decreed that it be affirmed.