PROVOSTY v. CLARK

(January 21, 1929. Opinion and Decree.)

Michel Provosty, of New Orleans, attorney for plaintiff, appellant.

Hugh S. Suthon, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Plaintiff is the owner of certain real estate in New Orleans fronting on Walnut street, and situated in square No. 58, which is bounded on the other three sides by Irma, Audubon, and Felicia streets. Defendant owns the property adjoining plaintiff's property on its Felicia street side. The purpose of this action is to fix the boundary between these two properties.

Passing over for the moment the question of just how far the various surveyors differ from one another in their respective locations of this line, it seems quite evident that the principal question involved is whether we should locate the properties, and consequently their dividing line, with reference to the actual street corners as they exist, and have for many years existed, or should locate them in accordance with a theoretical plan of subdivision which was apparently prepared to show what would have been an ideal subdivision, but which was not in fact followed in all particulars.

In 1897 the section of New Orleans bounded by St. Charles avenue, Magazine street, Audubon Park, and Broadway, was, on a plan made by Daney, surveyor, theoretically subdivided. On this plan streets and squares were laid off. Whether it was intended later to change the actual streets and squares to fit this subdivision, or whether this plan was intended to be a picture of what actually existed, is not made certain by the record; but it seems quite evident that, whatever was the purpose of the plan, it does not represent the actual situation, which situation has certainly existed, as it now is for 30 or 40 years. On the Daney plan all the streets intersecting Walnut were given a width of 40 feet. The actual conditions are that each of the streets is 40 feet wide except Irma street and Felicia street. Irma street is actually 42 feet wide and Felicia street is actually 38 feet wide. Furthermore, whereas the Daney plan allots to each square a frontage on Walnut street of 300 feet, the true fact, according to all the surveyors, is that each of the squares contains a small fraction more than 300 feet frontage, and square No. 58 contains a frontage of 300 feet and 10 inches.

The expert appointed by the court, and the other surveyors who testified, with the exception of E. L. Eustis, followed the Daney plan in its entirety. That is to say, they fixed the boundary between the two properties in question by reference to a starting point at Magazine and Walnut streets, which point is shown on the Daney plan and which point is admitted to be correct. But neither they nor Daney took into consideration the fact that Irma street is in fact 42 feet wide instead of 40.

The principal question presented to us is whether we shall use the Daney starting point at Magazine and Walnut streets and

no other; or whether we shall take into consideration the actual location of square No. 58. In other words, shall we commence our measurements at Magazine and Walnut and locate the boundary in question solely by reference to that point, or shall we accept square No. 58 as it is now located, and locate the boundary in dispute by reference to the actual corners of that square?

It is interesting to note that the property of defendant is described in the deed by which it was acquired as beginning: "80 feet from the corner of Felicia Street." Does this mean 80 feet from the actual corner, or 80 feet from the theoretical corner?

The Court of Appeal for the Second Circuit, in Rosenblath vs. Marabella, 3 La. App. 584, said:

"Where a street is given as one of the boundaries in the sale of a lot of ground, the street as open and in actual (use) at the time of the sale rather than (the) street as platted should be considered to be the one intended by the parties to the sale."

This seems to us to be logical, and it further seems that the defendant herself was entirely willing to accept actual conditions on that side of her property, as to accept them on that side would benefit her to the extent of the discrepancy between the Daney plan and the actual location of square No. 58. To allow her to accept actual conditions on that side, and to insist on the acceptance of the Daney plan for the location of the other side of her property, would give her the full benefit of the discrepancy, and in fact the full benefit of the "overage" which appears to exist in that square. As a matter of fact, accepting actual conditions, and prorating the 10-inch overage among the various property owners in that square, results in the giving to the defendant of three inches and four lines more frontage that her title calls for. It seems undisputed that the Daney plan is wrong in many minor details, and if that entire section were redivided and re-laid out, in accordance with that plan, almost every square and almost every street would have boundaries slightly different from those now actually existing. To apply the Daney plan to that particular square in question, and to require that all boundaries in that square be relocated in accordance with that plan, would be disastrous. It is fair to presume that, if the boundary in question here is established in accordance with that plan, each affected property owner in the square would insist on the relocation of his boundary. If this were done, some of the boundaries would be placed either where actual improvements exist now, or so near to actual improvements as to require their removal.

We mention this to show that each of the property owners must have bought his property and must have erected his improvements with reference to actual conditions, and not with reference to theoretical ones. All in all, the Eustis plan seems to be based on actual conditions, which conditions the various purchasers could see when they bought, and this allocation of the "overage" is in accordance with what all of the purchasers expected to receive and are entitled to, and we therefore find it to be the correct one and establish the boundary in accordance therewith.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed, and that the boundary be fixed in accordance with the plan of E. L. Eustis, dated May 18, 1923; defendant to pay costs.