CABIRAC, JR., v. BLANCHARD

(June 2, 1930. Opinion and Decree.)

E. S. Lazarus, of New Orleans, attorney for plaintiff, appellant.

R. A. Viosca, of New Orleans, attorney for defendant, appellee.

JANVIER, J. This is an action in boundary. There are two defendants, since it developed, after the suit was filed, that the property, which we will hereafter call the Blanchard property, in facts belongs to both Max Blanchard and his sister, Miss E. M. Blanchard.

Plaintiff and defendants are the owners of contiguous properties fronting on Moss street, which is the street parallel and adjacent to Bayou St. John.

In the rear of the properties and in the rear of all the other properties which front on Moss street on the north side of Esplanade avenue is the old brick wall ·of St. Louis Cemetery No. 3, and it is conceded by all of the surveyors who made surveys of the land in question that that brick wall is in its proper location and forms the continuous real line of all of the properties from Esplanade avenue to the northward. The boundary lines between all of the properties to which we have referred as fronting on Moss street were, as originally laid out, parallel to one another, but one of the properties, that which is now occupied by Camp Nichols as an old soldiers' home, and which we understand is the seventh property from Esplanade avenue, was, a great many years ago—probably more than thirty years—incorrectly fenced in; the wooden fence, which was intended to be on the northern border, having been so located that, on the Moss street end, it was and is something over two and one-half feet on the south side of the proper line.

At one time one Zambelli owned all of the properties from the Old Soldiers' Home northward. He determined to have all of this property surveyed with reference to actual conditions, and he thereupon employed Ernest L. Eustis, deputy city surveyor, to make this survey. In doing this work Mr. Eustis accepted as the correct boundary line the wooden fence to which we have referred as being some two and one-half feet to the south of the northern boundary of the Old Soldiers' Home. It therefore resulted that the Eustis survey showed partition lines between the various lots some two and one-half feet out of line on the Moss street end. We have no doubt whatever that the survey of Mr. Frank Waddill, which shows all of the partition lines as parallel to one another, and as being at right angles to the old cemetery wall, represents the correct locations of the various lots as they should have been laid out, but we also have no doubt that the survey of Mr. E. L. Eustis, which commences on the northern boundary of the property of the Old Soldiers' Home, also represents the actual conditions, as the properties were in fact developed.

The property which was sold to and is now owned by Cabirac, and that which was sold to and is now owned by the Blanchards, were both sold in accordance with the Waddill plan, and in both of these titles that plan is referred to. We are therefore called upon to determine whether or not Mr. Cabirac shall be allowed, in establishing the boundary line between his property and that of the Blanchards, to follow the plan of Mr. Eustis, or shall be required to establish the boundary in accordance with the plan of Mr. Waddill, which is the one referred to in his title. Counsel for plaintiff calls to our attention Riddell vs. Jackson, 14 La. Ann. 135, in which owners of contiguous properties liti-gated over the location of the boundary between them. Both had acquired from the same owner and, according to a survey referred to in the respective titles, it was evident that the dividing line, as it actually existed, was not located in accordance with that survey, and it was also evident that, if the line were moved to conform with the survey, buildings and improvements already located on the respective properties would be thrown across the dividing line, with the disastrous result referred to by us in Provosty vs. Clark, 11 La. App. 147, 119 So. 763. In Riddell vs. Jackson the court said:

"These designations of visible objects, constituting by far the most valuable part of the thing sold, must control an alleged measure of invisible lines, falsely stated by an incompetent or careless surveyor."

But that is not the situation which confronts us here. The survey, that of Waddill, according to which plaintiff and defendants bought, is not incorrect, but, on the contrary, shows the true boundary between the properties in question just where it should be. We are thus called upon to say that, where two contiguous property owners bought from the same vendor and according to the same survey, one can force the boundary to be moved to a position different from that shown in the survey, where that survey is shown to be correct, merely because some one else on another boundary has erected a boundary fence which does not conform to the survey in question.

In other words the question is not, as it was in Riddell vs. Jackson: "May we correct an erroneous survey?" but is, rather, "Must we disregard a correct one merely because someone else has disregarded it?"

Nor do we find that there is presented here a situation similar to that which con-

fronted us in Provosty vs. Clark, supra. There an entire square and, in fact, an entire series of squares, were out of proper place, provided a certain theoretical survey be accepted as correct. We cited F. H. Rosenblath vs. Marabella, 3 La. App. 584, in which the Court of Appeal for the Second circuit said:

"Where a street is given as one of the boundaries in the sale of a lot of ground, the street as open and in actual (use) at the time of the sale rather than (the) street as platted should be considered to be the one intended by the parties to the sale."

Here the error resulted solely from the incorrect location of the fence near the northern boundary of the Old Soldiers' Home, with the resulting erroneous location of the boundary now in dispute, due to the fact that, in fixing that boundary, the measurements were taken from that fence as though it were on the correct line. The evidence shows that the other properties owned by Zambelli were later sold in accordance with the Eustis survey and therefore, since all of the property was owned by the one ancestor in title, those various purchasers should be forced to establish their boundary lines in accordance with that survey. If there is a conflict between the owner of the property contiguous to the Cabirac property on its northern side and Cabirac, that must be determined with reference to the respective dates of the two purchases from Zambelli, but, inasmuch as all of those properties were purchased in accordance with the Eustis plan, we do not see that a correction of the boundary line, in accordance with the Waddill plan, of the two properties now in dispute will necessarily require that the boundaries of all of the other properties, sold in accordance with the Eustis plan, must be changed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, ordering the boundary in dispute fixed in accordance with the Waddill plan, dated February 20, 1918, be, and it is, affirmed, at the cost of appellant.