## WEATHERSBY v. HOGSETT

(December 15, 1930. Opinion and Decree.)
(March ·2, 1931. Opinion and Decree on Rehearing.)
(March 22, 1931. Rehearing Refused.)
(April 28, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Legier, McEnerny & Waguespack, of New Orleans, attorneys for plaintiff, appellant.

John R. Upton, of New Orleans, attorney for defendant, appellee.

JANVIER, J. By this petitory action Weathersby seeks to compel Hogsett to vacate a small irregular strip of land adjacent to the boundary between the property of plaintiff and that of defendant. Weathersby claiming that a proper placing of the boundary line would put the strip

of land which is in dispute on his side, and Hogsett contending that the boundary should be fixed where the fences now are, so as to allow the disputed strip to remain on his side. Hogsett also pleads the ten-year prescription under color of title.

We find that the various surveyors differ from one another in their respective locations of the boundary line, but, regardless of the slight difference among them, it is quite evident here, as it was in Provosty v. Clark, 11 La. App. 147, 119 So. 763, that a proper fixing of that dividing line depends almost entirely on a proper location of the corner of Eleonore and Pitt streets, on which corner Weathersby's property is situated.

Weathersby owns the lower, river side corner of Pitt and Eleonore streets and, according to his title, he should have a portion of land sixty feet front on Pitt street by sixty feet in depth and front on Eleonore street, all between parallel lines.

· Hogsett owns the property adjoining, on Eleonore street, that of Weathersby and measuring, according to the titles, sixty feet front on Eleonore street by a depth between parallel lines of sixty feet.

There is no dispute over the fact that Hogsett is now occupying more than sixty feet front on Eleonore street and that the property which is now inclosed between his fences is a little more, than sixty feet in width.

It is equally true that Weathersby is also at present using a frontage just a little greater than sixty feet and that at all points the property actually in use by him is wider than his title recites it should be. The surveyors produced as experts by Weathersby, however, state that, were he to recede from his present line along Pitt street to the correct property line, he would then have a front and width on Eleonore street of less than his allotted sixty feet. In other words, they state that the only reason both he and Hogsett are now using more than their allotted frontages on Eleonore street is that he (Weathersby) has extended his flower bed beyond the correct property line of Eleonore street.

In situations of this kind, it is, as we have said, imperative that the correct property line corner of the square be first located, as, from that point, we must start in fixing boundary lines between those owning properties in the square under consideration, and, as we said in Provosty v. Clark, supra, it is proper to fix such corners with respect to actual existing conditions, rather than with respect to what may have been intended as ideal on plans which were never actually carried out.

Therefore we are of the opinion that if the Pitt street property line, as actually occupied by Weathersby, could be said to be a true line in actual use all along that street, or along a substantial portion of it, we would have no hesitancy in adopting it as correct on that side of the square, though it would result in permitting the square to remain a little larger than the original surveyors intended when they laid out that portion of the city.

But reference to the sketches and surveys shows that that line has not been adopted by other property owners as the property line boundaries of their respective holdings. For instance, just in the rear of Weathersby's property is a large wall of an adjoining owner. This wall does not follow the continuation of the property line as now occupied by Weathersby, but extends considerably more into the sidewalk.

This is shown by the surveyors who testified for Hogsett, as well as those who testified for Weathersby, and if we use the large sketch of Ricketts, a surveyor largely relied on by Hogsett and a man of proven ability and experience, we find that that same line, if extended across into the square between Nashville and Arabella streets, and further still into the square of Arabella and Joseph streets, will be located far inside the property actually occupied by owners in those squares. This convinces us that the corner in dispute should be located in accordance with the method approved by us in Provosty v. Clark; that is to say, with reference to the width which was originally intended to be occupied on Pitt street between property lines on the two sides thereof. This will place the corner as contended for by Weathersby and will require the removal of the encroachments of Hogsett, but will, nevertheless, leave each the full width to which he is entitled.

The plea of prescription of ten years is not well founded. Since we have reached the conclusion that defendant's title does not include the narrow, irregular strip of land in question, it cannot be said that that strip has been occupied for ten years under color of title. Nor has the failure for ten years of Weathersby and his ancestors in title to object to the line as located estopped Weathersby to now complain, since it is evident that he did not know that there was an encroachment, and therefore his acquiescence in the line as it existed was not active, but merely passive. In Blanchard v. Monrose, 12 La. App. 503, 125 So. 891, 893, we said:

"It seems then that, although the Supreme Court has definitely decided that boundaries may be fixed by mere consent of the parties, and that such consent will form the basis of the prescription of 10 years, such consent must be more than mere passive acquiescence in the construction of a fence and must, in fact, be affirmative recognition of the fence as the boundary line.

"In Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672, we find a case quite similar to that presented here. Plaintiff brought suit to compel the removal of a portion of a brick building which encroached upon his property. The building in question and the encroachment had existed for nearly 20 years. Plaintiff was not aware of the fact that there was an encroachment and, therefore, had passively acquiesced in the maintenance of the building on the line in question. It was contended that this acquiescence formed the basis of a plea of prescription. The court held that the boundary had not been fixed according to law, and that the defendant had not acquired the property by adverse possession of 10 years under survey. Since the Supreme Court in other cases has held that actual survey is not necessary, but that actual consent or active acquiescence may be substituted therefor, we think the result in the Barker case is decisive of the question presented here.

"As the Supreme Court said in Frederick v. Brulard, 6 La. Ann. 382:

"'Under that state of facts, the consent alleged, if it was given, was clearly in error of the rights of the owner of the tract now held by the plaintiff, and would consequently fall within the principle on which it has been held more than once, that a mistake of this kind neither destroyed title nor conferred it.'"

Our decision in Blanchard v. Monrose, supra, has received the sanction of the Supreme Court, since that court refused to grant a writ of review.

It is therefore ordered, adjudged, and decreed that the judgment of nonsuit be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against defendant, and plaintiff is now recognized as the owner of the irregular strip of land in question; and defendant, Hogsett, is ordered to cease and desist from occupying same; and defendant,

Hogsett, is further ordered to remove, at his expense, the iron fence set in concrete which encroaches on the property of plaintiff eleven inches four lines; and defendant, Hogsett, is commanded to remove, at his expense, the wooden fence which encroaches five inches and four lines; and defendant, Hogsett, is commanded to remove, at his expense, the concrete garage which encroaches nine inches two lines. Defendant to pay all costs.

---

### ON REHEARING

JANVIER, J. It is unnecessary to restate the facts which give rise to this controversy, as they are fully set forth in our original opinion (131 So. 511) in which we reiterated our conclusion reached in Provosty v. Clark, 11 La. App. 147, 119 So. 763, that, in disputes as to boundaries within city squares, it is first necessary to fix the proper boundaries of the square containing the properties involved, and that, in fixing the boundaries of such square, there should be first taken into consideration actual conditions with reference to improvements, paving, et cetera, rather than those theoretical ideas of the original surveyors, which, though they may have been ideal, were never in fact carried out.

We stated that we could not in this case adopt the views of defendant as to what are the actual conditions with reference to the boundaries of the square in question, because there seemed to be no clearly defined and universally adhered to property line along the Pitt street side of the square, with which we are now concerned.

A further study of the various plans and sketches submitted and of the testimony of the various surveyors has, however, convinced us that in our original opinion we were in error, and that, if we follow the doctrine announced in Provosty v. Clark, as we believe we should, and fix the Pitt street property boundary of that square in accordance with actual conditions, we must hold that that strip of property in dispute between plaintiff and defendant, and which is now on defendant's side of the presently existing garage, board fence, iron fence, et cetera, which various improvements constitute the said presently existing boundary, actually belongs to defendant.

That the ideal conditions in that neighborhood were never actually carried out is conclusively shown by the testimony of Eustis, one of the surveyors employed by plaintiff. Mr. Eustis says:

"I have been practicing twenty years now, and not in any case in these twenty years have I ever found the title measurements of these squares to meet the actual physical conditions on the ground as the City Engineer has laid out these respective streets."

Mr. Eustis further testifies:

"I treat each square as a separate and independent unit, and if I can satisfy the titles in that particular square, there is no reason for me to take any of the property out of an adjoining square to satisfy any other square's title measurements."

The square in question is surrounded by curbing placed there by the city, and there can be no dispute as to the distance along the Eleonore street side of the square, between the Pitt street curb and the Prytania street curb, as those curbs actually exist. Assuming that the various surveyors are correct, and that there should be an eight-foot sidewalk both on Pitt street and on Prytania street, we are of the opinion that there would still

remain a little more than the three hundred feet necessary to accommodate all the titles of properties fronting on Eleonore street. In such a situation such small surplus as may exist should be permitted to remain divided among the property owners as it is already divided, unless some part of it is necessary to complete the title measurements of some property owner who may not have all that his title calls for. In the present case, if Weathersby's property be fixed as commencing eight feet from the curb of Pitt street, he will have a little more frontage on Eleonore street than his title calls for. The same will exist with reference to the Hogsett property, and no one in the square will be disturbed; whereas, if we hold that the Pitt street side of Weathersby's property should be moved further away from Pitt street, then presently existing conditions within the square will be disturbed and presently existing conditions along Pitt street, not only in that square, but in other squares, will be theoretically, at least, substantially disturbed.

For these reasons we believe that present conditions should not be interfered with, and that the boundary in dispute should remain as now located, but we are unable to render an absolute judgment for defendant, because the judgment appealed from dismissed the suit only as in case of nonsuit and defendant has not answered the appeal to ask for an absolute dismissal. We can do no more than affirm that judgment.

The decree heretofore rendered by us is recalled and vacated, and the judgment appealed from is affirmed at the cost of appellant.

Original decree recalled and vacated.

Judgment of district court affirmed.