272 So.2d 44 (1973)
Mrs. Bessie Fox HARRIS
v.
Clyde BOURGEOIS, Jr.
No. 5110.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
*45 Craig J. Cimo, Gretna, for plaintiff-appellant.
Perrin C. Butler, N. Buckner Barkley, Jr., New Orleans, and Louis H. Marrero, IV, Marrero, for third party defendant-appellee.
Midlo & Lehmann, Rene Lehmann, New Orleans, for plaintiff-appellee.
Before REGAN, BOUTALL, and BAILES, JJ.
BOUTALL, Judge.
Plaintiff brought a possessory action seeking damages for the disturbance of her possession of a certain strip of land and further praying for judgment ordering defendant to assert any adverse claim of *46 ownership he may have in accordance with article 3662 of the Code of Civil Procedure. The defendant filed an answer admitting the disturbance of possession complained of but asserted that he was the owner of the property in question by virtue of an acquisition from Marrero Land and Improvement Association, Ltd. He later filed a supplemental answer, reconventional demand and third party demand in which he reasserted the allegations of the original answer, set up his chain of title to the property in question and asked for judgment in reconvention against plaintiff decreeing defendant to be the sole owner of the property. Additionally, in a third party demand, he avers that he expended $36,000.00 in expenses, and called his predecessor in title in warranty in the alternative seeking damages against it to that extent. Thereafter plaintiff filed an answer to the reconventional demand in which she set up her chain of title to the property in question. The third party defendant, Marrero Land and Improvement Association, Ltd., answered averring that it transferred good title to the original defendant, and that additionally, he accepted and approved the encroachments on the property, if any there were. The trial court rendered judgment in favor of plaintiff, recognizing her to be the owner of the property, and awarding damages in the amount of $1,000.00 against the defendant. The court further rendered judgment dismissing the third party demand. The defendant appeals from the adverse judgment.
The record shows that there is no dispute as to the titles involved; that plaintiff, Mrs. Bassie Fox Harris, is the owner of lot 7 of Robinson Avenue Subdivision, and that defendant, Clyde V. Bourgeois, Jr., is the owner of lot 8 of Robinson Avenue Subdivision. The basic dispute is as to the location or placement of these lots, which are 45 feet in width and adjoin each other. There is a 12 foot strip in the area of the common property line which is claimed by each of the parties to be a portion of his respective lot. This strip of ground actually measures 11 and 2/10ths feet front and 12 and 8/10ths feet in the rear. In addition to her claim of title ownership of the property in question, Mrs. Harris claims ownership by virtue of the acquisitive prescription of 30 years.
The area in question is an old subdivision, apparently created around 1902. Plaintiff's uncle, Irvin Wallace, acquired lot 7 in 1904 and shortly thereafter constructed a house which still stands upon the premises. At this time the Marrero Land and Improvement Association, Ltd., (hereinafter called Marrero Land) owned the adjoining lot 8 and at some later date, constructed a rental house upon the premises. This house remained in existence for many years until the property was acquired by Mr. Bourgeois, the present owner of lot 8. The present conflict did not come into being until sometime during 1965 when Mr. Bourgeois sought to purchase the property from Marrero Land and a survey was made which showed the existing fence belonging to lot 7 to be some 12 feet upon lot 8. The issue as presented to the trial court, and to us on appeal, is whether the dividing line between lot 7 and lot 8 is correctly placed on the survey by Gilbert & Kelly, dated September 27, 1960 (as proposed by Mrs. Harris) or whether the line is correctly placed on the survey of J. J. Perret, dated May 10, 1965 (as proposed by Mr. Bourgeois).
All of the surveyors testified that this was an extremely difficult area within which to make a survey, both because of the lack of reference points, and because of some confusion arising out of older surveys. However, the basic difference between them is that in locating the property in question, both used the railroad tracks within the Southern Pacific Railroad right-of-way as a reference point, the difference being that one surveyor considered the center line of the southernmost tracks to be the proper starting point and the other considered the center line of the northernmost tracks, some 12½ feet away, to be the proper starting point. *47 This distance between the center line of the two railroads tracks accounts for the major difference in their survey.
The plaintiff's surveyor, Mr. Kelly, testified that he used 3 old base surveys of Zander dated 1902, 1909 and 1915, in conducting his survey. Although he was not able to determine from the surveys exactly which track was used by Mr. Zander, he did manage to locate an iron pipe which was located on the boundary line between lot 10 and lot 11. The importance of this pipe is that all of the lots from 10 downward comprise what is called Old Robinson Subdivision comprised of 45 foot lots, and all of the lots from 11 upward, are the new Robinson Subdivision comprised of 40 foot lots. Using this pipe as his starting point he measured back towards the railroad track and determined that the proper track to use was the center line of the southernmost track. He surveyed and placed plaintiff's lot 7 in accordance with this method of computation.
As opposed to this, Mr. Perret testified that the method he used was to attempt to discover any old pipes or markers that had previously been used, and that he eventually discovered a monument which apparently marked the southern line of the right-of-way of the Southern Pacific Railroad where it intersected the northeastern boundary line of the Justice Tract, which point should be coincident with the intersection of the northwest line of the Old Robinson Subdivision. Using this monument as a starting point, he determined that the northernmost track was the proper track to use, and hence started his survey from the northernmost track, and placed lot 8 accordingly.
It is important to note that none of the experts could testify exactly as to the width of the right-of-way of the Southern Pacific Railroad, nor could it be determined whether there were one or two tracks in existence at the time of the Zander survey, or which track, for that matter, that Zander may have used some 50 years before.
The trial judge was impressed with the explanation of surveyor Kelly, and so found. We cannot disturb his findings unless there is manifest error, and we find none here. In fact, it appears to us that the houses in this subdivision were probably all built upon the same premise as Mr. Kelly, used inasmuch as there would be only one house, that is, the first from the railroad track, which would encroach upon a neighboring lot if we accept his survey as correct. On the other hand, if we accept the survey of Mr. Perret, there would be four other houses, in addition to the first house, which would be encroaching upon other lots. We feel that this condition comes within the principles announced in the case of Provosty v. Clark, 11 La.App. 147, 119 So. 763 (La.App.Orl., 1929), and we consider this to be an additional reason to establish the correctness of the judgment below. That case contains the following language:
"* * * To apply the Daney plan to that particular square in question, and to require that all boundaries in that square be relocated in accordance with that plan, would be disastrous. It is fair to presume that, if the boundary in question here is established in accordance with that plan, each affected property owner in the square would insist on the relocation of his boundary. If this were done, some of the boundaries would be placed either where actual improvements exist now, or so near to actual improvements as to require their removal.
"We mention this to show that each of the property owners must have bought his property and must have erected his improvements with reference to actual conditions, and not with reference to theoretical ones. * * *."
In addition to concluding that the correct survey was that of Mr. Kelly, which placed the plaintiff's lot 7 in its correct position, the trial judge further concluded that Mrs. Harris had further acquired the ownership of the disputed strip *48 of ground because of the acquisitive prescription of 30 years. The plaintiff produced a number of witnesses who varied in age from 70 to 80 years who testified that as long as they could remember the property line had been delineated by a wooden fence. Mrs. Harris testified that she remembered the wooden fence, because it was in existence prior to 1915, when she lived for a year or so at the premises with her aunt, because her mother's place had blown down in the 1915 storm. The witnesses all testified that this fence had remained in existence until 1954 at which time the fence was removed and a chain-link fence was installed. The only evidence contrary to this is that given by the secretary and rent manager of Marrero Land, Mr. Harry Pitre. He testified that there were actually 2 fences between the two premises, one a boundary fence closer to Mrs. Harris' house, and the other, which is approximately where the chain-link fence was located, was only a chicken fence apparently built by one of the Marrero Land tenants to keep chickens. Of course, there was some uncertainty in his testimony as to the precise location of these fences, as indeed there was in all of the witnesses, but this is something which can be expected in a situation where the location of the fence was not at issue for a number of years, and during which time no one except the actual parties would concern themselves with the location of the fence. However, the trial judge found that the wooden fence had been erected and remained in place from 1915 until it was removed and that Mrs. Harris exercised the right of ownership over the 12 foot strip. We find no error in his conclusion.
Having found that plaintiff is the owner of the 12 foot strip, we now move to a consideration of the damages.
The evidence shows that when Mr. Bourgeois discovered the apparent mislocation of the Harris fence on the survey that was made for lot 8, he attempted unsuccessfully to have Mrs. Harris to remove the fence. Thereafter in January 1968, he entered the premises, tore down the fence belonging to Mrs. Harris and began the construction of the new improvements he intended to place upon the property. In connection with these improvements, he built a new fence which, of course, is now located upon Mrs. Harris' property, and in addition has installed a concrete slab for the length of the building which also encroaches upon Mrs. Harris' property. The evidence shows that it would have cost Mrs. Harris $799.56 to restore her property to its original condition in 1969. There was also testimony that these costs would increase as time progressed because of rising prices. Considering these facts, plus the fact that Mrs. Harris has been deprived of the use of the property since January 1968, we cannot conclude that the damages awarded are excessive.
In connection with this aspect of the case, defendant urges to us an exception of prescription, contending that more than 1 year had elapsed from the trespasses complained of prior to the filing of suit on August 9, 1968. However, the survey which he introduced into evidence by Mr. Dufrene dated January 18, 1968, shows the existence of the fence belonging to Mrs. Harris, and additionally, all of his canceled checks for work, etc., show that the work was done sometime after January, 1968. We believe that the trial judge properly overruled the exception of prescription.
This brings us to a consideration of the third party demand made by defendant upon Marrero Land.
The original defendant, Clyde V. Bourgeois, Jr., called in warranty his vendor, Marrero Land and Improvement Association, Ltd., praying that it be cast in judgment for any judgments rendered against himself. The record shows a notarial act of sale with warranty dated May 13, 1968, of lot 8 of Robinson Avenue Subdivision, measuring 45 feet front on Robinson Avenue in accordance with the February 20, 1902, plan of Henry L. Zander, Parish Surveyor. *49 The description is also in accordance with plan of survey made by J. J. Perret, Registered Land Surveyor, dated May 10, 1965, a copy of which was attached and is one of the surveys at issue here.
The record shows that when Buorgeois approached Marrero Land in order to seek purchase of the property, Marrero Land caused the property to be surveyed by Mr. Perret. That survey showed the 12 foot encroachment of the fence of adjoining lot 7. Marrero Land informed Mr. Bourgeois of these encroachments and of the fact that there was the problem of location of the lots in this area. The possibility of a future sale was then conditioned upon Mr. Bourgeois clearing up the apparent encroachment with the owner of lot 7. The evidence showed that although some attempts were made, no agreement between Mr. Bourgeois and the owner of lot 7 was entered into, but that Mr. Bourgeois simply removed the fence then existing and substituted another fence some 12 feet over. In accordance with the usual custom between Mr. Bourgeois and Marrero Land, he then began to build the improvements on the property in accordance with the Perret survey, and after completion of the improvements, then the title was passed from Marrero Land to Mr. Bourgeois.
Certainly, the purchaser of the real estate was cognizant of the fact that there was a defect in the title he was about to acquire. Knowing of the defect, he took it upon himself to clear it up, and having failed to do so, he cannot now call upon his vendor to pay the damages for mislocation of his improvements.
Our courts have consistently held that where the purchaser is cognizant of a defect in title he is about to acquire, he cannot call upon the vendor to make good the damages resulting from the defect. Tennent v. Caffery, 170 La. 680, 129 So. 128 (1930); Werk v. Leland University, 155 La. 971, 99 So. 716 (1924); Harang v. Blanc, 34 La.Ann. 632 (1882); Byrne v. Ortte, 33 So.2d 209 (La.App.Orl., 1948).
We note that third party plaintiff sought only damages in connection with removal of the improvements he placed upon the property. The only damages found have been enumerated above. The trial court did not find that the appellant here would have to remove the building itself. Indeed, he specifically found that appellant bought and received a 45 foot front parcel of ground, apparently concluding that under the survey made by Gilbert & Kelly, there was available to appellant the 12 feet located on the other side of the property, which is located within an existing fence. The trial judge concluded that all that Marrero guaranteed was a 45 foot lot of ground, and this is what was transferred to appellant.
For the foregoing reasons, the judgment appealed from is affirmed. Appellant to pay all costs of these proceedings.
Affirmed.