KNOLL, Judge.
Shelby A. Duay (hereafter Duay) appeals the judgment of the trial court fixing the boundary between his residential lot and that of Ronald L. Diggins (hereafter Dig-gins). The trial court accepted the report of Alfred Schoeffler, the court appointed surveyor, which recognized Diggins’s right to 150.40 feet frontage and effectively reduced Duay’s frontage from 150.40 to 147.-57 feet. Duay contends the trial court erred: (1) in establishing the boundary line in accordance with the court-appointed surveyor’s report which reduced Duay’s frontage below that called for in his deed; and (2) in assessing court costs equally between the litigants. We reverse and render.
FACTS
This is an action brought by Duay, the owner of Lot 6 of Block D of the Little Woods Subdivision, against Diggins, the adjacent owner of Lot 7, to establish the boundary between the two lots.
The Little Woods Subdivision was established in 1954 according to a survey by W.K. Frantz, Jr., a civil engineer. The recorded plat shows that Block D consists of seven lots along Bayou Teche with varying frontages on Bayou Drive; in particular, Lots 6 and 7 each call for frontages of 150.4 feet. Diggins purchased Lot 7 on September 27, 1977; Duay acquired Lot 6 on July 21, 1981. Neither party had their lots surveyed at the time of acquisition, and the property descriptions contained in their acts of sale conform to the recorded plat of Little Woods Subdivision.
It is undisputed that the frontage lines of the lots of Block D are correctly delineated on the recorded plat of W.K. Frantz. However, when the individual lots were marked on the ground with iron stakes, each lot was marked approximately three feet east of where it should have been. As a result of this incorrect ground marking, Lot 7, the easternmost exterior lot of Block D, encroached beyond the subdivision property onto the property of Dr. William Harkrider.
This litigation arose in 1981 when G.K. Pratt Munson, a civil engineer and survey- or, discovered while surveying Dr. Hark-rider’s property that Diggins’s property (Lot 7) encroached on Dr. Harkrider’s. Diggins then employed Munson to survey his lot; Munson adjusted Diggins’s eastern boundary so as not to encroach on Hark-rider’s property, and, after staking Dig-gins’s frontage on Bayou Street as provided in the deed, he determined that Lot 6, owned by Duay, encroached on Diggins’s western boundary. After compromise efforts failed, Duay initiated this boundary action against Diggins.
*271 BOUNDARY
Duay contends that the trial court should not have allocated to him the entire loss of frontage because of Diggins’s encroachment onto adjacent property to the east. He argues that the trial court’s judgment affects the boundary lines of the other five lots of Block D, none of whose owners are parties to this litigation, and disturbs the monuments of Lot 5, which a registered surveyor linked over ten years ago to the old erroneous ground markers.
LSA-C.C. art. 785 provides in pertinent part:
“The fixing of the boundary may involve determination of the line of separation between contiguous lands, if it is uncertain or disputed; it may also involve the placement of markers on the ground, if markers were never placed, were wrongly placed, or are no longer to be seen. ”
The trial court’s solution, following the court-appointed surveyor, consists of correcting the erroneous ground markings, and requires that Duay concede 3 feet to Diggins so that Diggins would have his full frontage. Since there is no shortage of land in Block D, the consequence of the trial court’s solution is that each lot owner must shift westward by approximately three feet until Lot l’s western boundary would finally coincide with Frantz’s original survey. However, because only Dig-gins and Duay were before the court, the trial judge could only adjust the boundary line between those two lots. Therefore, Duay was left with only the implication that should he pursue a boundary action against the owner of Lot 5, his immediate neighbor to the west, that that suit would have the same result.
Courts are reluctant to give effect to surveys that would relocate or seriously alter the boundaries of parties other than the original plaintiff and defendant. Gibson v. Johnson, 244 So.2d 713 (La.App.2nd Cir.1971), writ denied, 258 La. 347, 246 So.2d 197 (1971).
Contrary to the trial court’s solution, Duay and his surveyors take the position that in circumstances such as in the case sub judice, the end lot, the lot which encroaches beyond the subdivision, suffers the entire shortage. Their rationale is that policy and law require that where lots are erroneously marked on the ground and sales are transacted, that the erroneous markings control. Duay’s surveyors concluded that good surveying authorities support this view, and they argue that if this practice is not adhered to, the chain effect through Block D may cause havoc where construction and development have taken place on the lots erroneously monumented.
We find the case of Provosty v. Clark, 11 La.App. 147, 119 So. 763 (1929), illumina-tive of Duay’s position. In Provosty the court was presented with a question of whether the dividing line between adjoining properties should be located by the court-appointed surveyor with reference to the actual street corners as they have existed for many years, or should they be located in accordance with a theoretical plan of subdivision (the Deney Plan), which in fact was not followed. In deciding that the ground monument controlled the appellate court stated:

“To apply the Daney plan to that particular square in question, and to require that all boundaries in that square be relocated in accordance with that plan, would be disastrous. It is fair to presume that, if the boundary in question here is established in accordance with that plan, each affected property owner in the square would insist on the relocation of his boundary. If this were done, some of the boundaries would be placed either where actual improvements exist now, or so near to actual improvements as to require their removal.

We mention this to show that each of the property owners must have bought his property and must have erected his improvements with reference to actual conditions, and not with reference to theoretical ones. ”
Several cases involving boundary actions have relied on and followed the Provosty *272 rationale. Harris v. Bourgeois, 272 So.2d 44 (La.App.4th Cir.1973); Bernard Co. v. Cook, 59 So.2d 170 (La.App.Orl.1952); Thomas v. Patenotte, 47 So.2d 62 (La.App. 1st Cir.1950). The holdings in each of those cases centered on an understanding that if the titleholders were all located in accordance with their titles as delineated on the original survey, there would result the upsetting of boundary lines for all landowners along that survey line. Therefore, in such limited instances, the original survey must yield to the erroneous ground markings on which numerous individuals have relied for a number of years.
We find the reasoning of Provosty and its progeny applicable to the boundary dispute in question. Duay’s surveyors, Raymond and Brian Marie, testified that although Frantz’s original subdivision plat correctly reflected the lots of Block D of Little Woods Subdivision, the lot corners were incorrectly monumented on the ground. In 1968 Raymond Marie surveyed Lot 5 and found the monuments marking the erroneous northeastern corners of Lots 5, 6 and 7. (See attached Appendix 1; the three corners noted are marked A, B, and C.) In 1981 Brian Marie found those monuments earlier noted by Raymond, and additionally located a similar monument entangled in tree roots at the northwestern corner of Lot 4. Houses and driveways have been built according to the ground markers. Alfred Schoeffler, the court-appointed surveyor, testified that the lot owners of Block D have measured their property with reference to the erroneous ground markers, and he admitted that if subdivisions are incorrectly monumented on the ground, a subsequent surveyor would be bound to retrace that error, and that error, if on the ground, controls. Nevertheless, Schoeffler attempted to correct the error by relocating the boundary line between Lots 6 and 7 to conform to the original plat.
The learned trial judge gave lengthy and conscientious reasons for judgment; however, in light of the disastrous effect such a relocation would necessitate, under the reasoning of Provosty, supra, we are constrained to reverse. Accordingly, the boundary shall be fixed in accordance with the survey of Brian R. Marie, Registered Surveyor, dated November 20, 1981, attached hereto as Appendix 1.
COURT COSTS
Where there is a bona fide boundary dispute and settlement of the issue can only be reached by judicial determination, costs should be shared equally by the litigants. Girard v. Donlon, 127 So.2d 761 (La.App.3rd Cir.1961). Accordingly, we shall assess the costs of the trial court and this appeal equally between the parties.
DECREE
For the foregoing reasons, IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the trial court is reversed, and judgment is rendered in favor of Shelby Anthony Duay and Sylvia Duay and against Ronald Leon Diggins and Ellen Diggins establishing the line formed between their respective properties, as that found by Brian R. Marie as the dividing line between Lots 6 and 7 of Block D of the Little Woods Subdivision. The boundary line is hereby established and declared to be that line as delineated on the plat by Brian R. Marie, dated November 20,1981, a copy of which is attached hereto. Costs of the trial court and appeal are assessed equally between the parties.
REVERSED AND RENDERED.
*273 [[Image here]]