McCLENDON, J.
| ^Defendant, Michael Kelly, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. Defendant pled not guilty and was tried before a jury. The jury found defendant guilty. The trial court sentenced defendant to a term of life imprisonment at *207 hard labor without benefit of probation, parole, or suspension of sentence.
Defendant appeals. After reviewing the record, we find no merit to any of his assignments of error and affirm his conviction and sentence.
FACTS
Defendant and Joseph Chase, the victim, were both inmates incarcerated at the Louisiana State Penitentiary (LSP) in Angola. Defendant and the victim were assigned to the same cell, located in Camp D, Raven 4. Prior to the incident at issue, the men had been cellmates for approximately six weeks. On February 26, 2004, around 6:00 in the evening, defendant and Chase were escorted to the shower cell located at the end of the tier by Sergeant Henry Lavalais. Sergeant Lavalais locked them in the shower cell, and left for a brief period in order to complete a scheduled check of the inmates on the tier. Sergeant Lavalais was not gone very long when he heard a noise coming from the shower cell. Sergeant Lavalais returned to the shower cell and saw defendant repeatedly stabbing the victim. Defendant stopped his attack of the victim when ordered to do so by Sergeant Lavalais. Defendant refused to hand over the knife he was holding to Sergeant Lavalais, but eventually handed the knife to Sergeant Matthew Stokes, who came upon the scene shortly after the stabbing ceased.
Defendant, who was clad only in white boxer shorts, was removed from the shower cell. The victim, who was naked, was taken to the medical facility where he died. Dr. Alfredo Suarez performed the autopsy on the ^victim and was accepted by the trial court as an expert in forensic pathology. According to Dr. Suarez, the victim bled to death as a result of receiving thirteen stab wounds and fourteen incise (cut) wounds. Dr. Suarez testified that three of the stab wounds would have been fatal by themselves. Dr. Suarez also testified that the wounds were consistent with a knife blade, probably five inches long. Dr. Suarez agreed that the homemade knife seized from defendant was the type of weapon that could cause the wounds sustained by the victim.
The homemade knife, or shank, was seized from defendant at the time of the incident. Both Sergeants Stokes and La-valais observed defendant with the weapon in his hand. No weapon was recovered from the victim.
Lieutenant Trent Barton, an investigator employed at LSP, learned that defendant might have concealed the weapon in a Bible. A search of defendant’s cell revealed a Bible laying on top the mattress of defendant’s top bunk. The Bible had paper wrapped around it, resembling a homemade folder. Lt. Barton testified that the back of the Bible had been cut where something could be placed inside of it.
The investigation of the incident also resulted in two letters written by defendant that were seized by prison security.
The defendant did not testify at trial.
CHARACTER EVIDENCE OF VICTIM
In his first assignment of error, defendant argues that the trial court erred in sustaining the State’s objection to the introduction of character evidence of the victim. During the direct examination of Fabien Harper, an inmate who had previously shared a cell with the victim, defendant attempted to introduce evidence of the dangerous character of the victim. |4The trial court sustained an objection by the State to the introduction of such evidence and defendant objected to the trial court’s ruling.
*208 Louisiana Code of Evidence art. 404(A), governing the admissibility of character evidence, provides in part:
A. Character evidence generally. Evidence of a person’s character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity .therewith on a particular occasion, except:
[[Image here]]
(2) Character of victim, (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; .... (Emphasis added.)
Thus, evidence of a person’s character generally is not admissible to prove that the person acted in conformity with his or her character on a particular occasion. However, there are several specific exceptions to this general rule. With respect to evidence of the dangerous character of the victim of a crime, such evidence is admissible (1) when the accused offers appreciable evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, or (2) when the accused, relying on the defense of self-defense, establishes (a) a history of assaultive behavior between the victim and the accused and (b) a familial or intimate relationship between the victim and the accused. State v. Rodrigue, 98-1558, pp. 4-5 (La.4/13/99), 734 So.2d 608, 610-11.
| ¡¿Defendant claimed he acted in self-defense and sought to introduce evidence of the victim’s dangerous character through the exception found in LSA-C.E. art. 404(A)(2). Under this exception, before evidence of the victim’s dangerous character can be introduced, it must first be established that a history of assaultive behavior existed between the victim and the defendant and a familial or intimate relationship existed between the victim and the defendant.
In the present case, Harper testified that he had been cellmates with the victim for approximately two weeks before being reassigned. Harper described the victim as “a bully” before the trial court sustained the State’s objection to his testimony.
At the time the trial court sustained the State’s objection, the only requirement of the Article 404(A)(2) exception that had been established was that the victim and defendant lived in the same cell for a period of six weeks prior to the victim’s death. No proffer of evidence was made by the defendant. While defendant argues that such a relationship qualifies as an “intimate” relationship for purposes of the code article, we note that defendant failed to establish that there was a history of assaultive behavior between the victim and defendant. Thus, the requirements of the exception had not been met at the time defendant sought to introduce evidence of *209 the victim’s dangerous character. We note that none of the witnesses who testified for defendant indicated that any assaultive behavior existed between the victim and defendant. Although one fellow inmate claimed to have heard raised voices coming from defendant’s cell on occasion, no evidence was presented that the relationship between the victim and defendant had ever become physical. Accordingly, the proper foundation was never | ^established in order for defendant to introduce evidence of the victim’s dangerous character.
Furthermore, we disagree with defendant’s argument that his relationship to the victim, which consisted of sharing a ten-by-ten foot cell for six weeks, qualifies as an intimate relationship for purposes of the article 404(A)(2) exception. Neither defendant nor the State cite any jurisprudence to support whether the relationship between cellmates can qualify as “intimate.” However, Black’s Law Dictionary defines “intimate” as, “[cjlose in friendship or acquaintance, familiar, near, confidential.” Black’s Law Dictionary 821 (6th ed.1990). In brief, defendant states the following, “Certainly, there is no evidence to suggest that these two men were involved in a sexual relationship and that is not being suggested by this argument.” As the State points out in brief, the victim and defendant may have shared physical living space, but there was no familial or intimate relationship between them. Two letters written by defendant reflect defendant wanted to be moved to another cell. Testimony by inmates Ronald Jones, Troy Payne, Dan Barrios, and Derrick Curry, indicated that defendant had requested a cell change.
In this case, we do not And that the mere living in close quarters without some evidence of a close personal relationship qualifies as an intimate relationship for purposes of the LSA-C.E. art. 404(A)(2) exception to the prohibited admission of evidence of the dangerous character of the victim. The purpose of establishing this particular exception was to provide a certain measure of relief for defendants in the so-called “battered wife” cases. We realize that there are broader categories of domestic situations beyond the husband-wife relationship where this exception could apply; however, all of those situations would include an intimate personal or sexual ^relationship and there has been no evidence of such a relationship between the victim and the defendant introduced in the present case.[1] Moreover, defendant failed to proffer the evidence of the victim’s dangerous character that he was allegedly prevented from presenting to the jury. Therefore, even if this Court were to conclude an “intimate” relationship existed, there is nothing for us to review without a proffer. LSA-C.E. art. 103(A)(2); see State v. Lynch, 94-0543, pp. 17-18 (La.App. 1 Cir. 5/5/95), 655 So.2d 470, 480, writ denied, 95-1441 (La.11/13/95), 662 So.2d 466. Finally, the only argument in the defendant’s brief is that the victim was a “bully,” and such evidence was presented to the jury anyway.
The trial court properly sustained the State’s objection barring the admissibility of evidence of the dangerous character of the victim. This assignment of error is without merit.
SUFFICIENCY OF THE EVIDENCE
In his second assignment of error, defendant argues that the evidence was *210 insufficient to support Ms conviction for second degree murder. Specifically, defendant argues that the State failed to establish that defendant had the specific intent to kill the victim and that he was not acting in self-defense.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Our standard of review is an objective ¡^standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Williams, 01-0944, p. 5 (La.App. 1 Cir. 12/28/01), 804 So.2d 932, 939, writ denied, 02-0399 (La.2/14/03), 836 So.2d 135.
Second degree murder is defined, in pertinent part, by LSA-R.S. 14:30.1(A)(1) as “the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm .... ” Specific intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. Williams, 01-0944 at p. 5, 804 So.2d at 939. In the instant case, defendant does not deny that he stabbed the victim, or that the victim died as a result of the wounds he inflicted. Defendant argues instead that he stabbed the victim in self-defense.
When the defendant in a homicide prosecution claims self-defense, the State must prove beyond a reasonable doubt that the homicide was not committed in self-defense. Louisiana Revised Statute 14:20(1) provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save him from that danger. On appeal, the relevant inquiry is whether or not, after viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that the .[¡¡defendant did not act in self-defense. Williams, 01-0944 at pp. 5-6, 804 So.2d at 939.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder’s determination of guilt. Williams, 01-0944 at p. 6, 804 So.2d at 939.
Viewing the evidence in the light most favorable to the prosecution, we find that the evidence sufficiently supports defendant’s second degree murder conviction. Sergeant Lavalais testified that he saw defendant stabbing the victim multiple times. The victim was not armed, nor was there ever any evidence that the victim initiated a confrontation with defendant in *211 the shower. The autopsy revealed that the victim sustained thirteen stab wounds and fourteen cuts. There was no evidence that defendant sustained any injury during the shower incident.
In a letter written by defendant to Lynn Tavceda, who is identified as defendant’s sister, defendant wrote, “After trying to get moved into another cell w/no luck I just said f— everything, I’m gona [sic] f— his stupid ass up.” In the same letter, defendant also wrote that he could have gotten around killing the victim, but “I didn’t want to go that route.” In a second letter written by defendant to his friend, James Allison, dated March 2, 2004, defendant tells his friend of killing the victim and writes, “And maybe there could’ve been another way of getting around that.” Although both of defendant’s letters indicate he was having problems with the victim and had|inrequested a cell change, there was no evidence from any of the LSP employees that defendant wanted to change cells. Moreover, defendant’s letters do not indicate precisely what type of problems he was having with the victim.
Because of the multiple stab wounds inflicted on the unarmed victim, the absence of any action on the part of the victim to provoke defendant, and defendant’s admissions in his letters that he wanted to hurt the victim, the jury clearly had a basis to conclude that defendant intended to kill the victim and his action was not in self-defense.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. Although we acknowledge that the examples given in Article 404(2)(A) of a husband-wife, parent-child, or concubinage relationship are non-exclusive, they are illustrative of the types of relationships intended to be included in the exception.