GUIDRY, J.
*1094 The defendant, Michael Scott Papizan, was charged by bill of information with aggravated crime against nature. The trial court granted a motion to quash the refiled bill, finding the state flaunted its authority by dismissing defendant's previous bill of information on the same charge then refiling the present bill. The state appeals. We affirm.
FACTS AND PROCEDURAL HISTORY
On October 21, 2015, the defendant was first charged with aggravated crime against nature. See La. R.S. 14:89.1A(2). According to the affidavit of probable cause, during 2015, the defendant inappropriately touched his son's genitalia on repeated occasions after showering with him.
Following that first charge, the defendant's jury trial began on June 27, 2016. During voir dire , the state objected to certain questions asked by defense counsel. In one instance, a prospective juror was asked if she had experience with "a child custody issue or a divorce where you had to fight like crazy and you use your child as a pawn." That prospective juror said her parents divorced, and defense counsel asked if either parent tried "to get you to go with their version and their side, and kind of manipulate you back and forth." The state objected, arguing the question improperly inquired into the facts of the case. The trial court warned defense counsel not to get "too close to the custody issue," but said questions about jurors' own situations would be allowed.
Each panel member was then asked by defense counsel if they were divorced and, if so, whether the divorce involved a custody dispute. To that inquiry, a prospective juror stated he had a son and daughter, and defense counsel then asked, "With the boy, what kind of duty did you have? Did you have bathing duty and shower duty with your boy?" The state objected, and the trial court cautioned defense counsel he was "crossing the line" and "broadcasting ... the facts of the case," but allowed the questioning to continue. Defense counsel then asked prospective jurors whether they "get in the shower with their boy," or "think it's wrong" to do so.[1]
The next day the state filed a motion for mistrial, asserting defense counsel's questioning improperly inquired into the facts of the case and tainted the jury pool. Defense counsel countered that his questions were proper and did not warrant a mistrial. The motion was denied. The state then moved to dismiss the jury pool, which was denied. A request for a stay was also denied by the trial court. The state then announced it was dismissing the prosecution without prejudice, and court was adjourned.
*1095 Approximately five weeks later, the state filed a new bill of information charging the defendant with the same crime. The defendant filed a motion to quash the new bill of information, asserting the state violated his due process rights by dismissing and refiling the same bill of information, allegedly because the state was dissatisfied with jury selection and wanted to "start over." According to the defendant, by "flaunting [its] authority," the state would cause the defendant to incur additional expenses to defend the reinstated prosecution, including legal fees and the cost of a jury consultant for a second trial. The trial court granted the motion to quash, finding the state "did flaunt [its] authority" by dismissing and refiling the bill of information. The state argues on appeal its actions were a lawful exercise of prosecutorial discretion taken in response to improper voir dire by defense counsel, and the defendant failed to prove specific prejudice to his right to a fair trial.
DISCUSSION
The district attorney's authority over criminal prosecutions in his district is well established. See La. Const. art. V, § 26 (B); La. C. Cr. P. art. 61. He has entire charge and control of every criminal prosecution instituted or pending in his district and determines whom, when, and how he shall prosecute. La. C. Cr. P. art. 61. The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, without leave of court. See La. C. Cr. P. art. 691. The dismissal of a prosecution rests entirely within the discretion of the prosecuting attorney. State v. Sykes, 364 So.2d 1293, 1297 (La. 1978).
A dismissal is generally not a bar to a subsequent prosecution for the same offense. See La. C. Cr. P. art. 693. Two statutory exceptions to this rule are when the dismissal is entered (1) without the defendant's consent after the first witness is sworn at the trial, and (2) after a city court conviction is appealed to the district court for a trial de novo. See La. C. Cr. P. art. 693. Neither exception is applicable in this case.[2]
The right to reinstate a prosecution is also subject to time limitations. A new prosecution on the same facts must be instituted within the time established for the charged offense, or within six months from the date of dismissal of a timely instituted prosecution, whichever is longer. See La. C. Cr. P. art. 576. The new prosecution cannot circumvent the accused's right to a speedy trial. See U.S. Const. Amend. VI ; La. Const. art. I, § 16 ; La. C. Cr. P. arts. 572, 576, and 578.[3] Here, the defendant does not claim the refiled bill of information violates these time limits. The second bill of information was filed well within both the six-year period for prosecuting the charged offense and the two-year time limit for bringing the case to trial. See La. C. Cr. P. arts. 572 and 578A(2). Thus, the refiled bill of information is not time-barred or otherwise expressly *1096 prohibited by the Code of Criminal Procedure.
Rather, the defendant rests his motion to quash on the premise that the dismissing and refiling of the bill of information violated his constitutional right to due process. See U.S. Const. amends. V and XIV ; La. Const. art. I, § 2. For support, he relies on a line of cases from the Louisiana Supreme Court addressing motions to quash based on allegations a district attorney "flaunted" its authority by dismissing and refiling a criminal prosecution. See State v. King, 10-2638, p. 6 (La. 5/6/11), 60 So.3d 615, 618 (per curiam ); State v. Batiste, 05-1571, p. 5 (La. 10/17/06), 939 So.2d 1245, 1249 ; State v. Love, 00-3347, pp. 2-3 (La. 5/23/03), 847 So.2d 1198, 1202-03. In most of these cases, the district attorney dismissed and reinstated the prosecution after being denied a continuance of a trial. See King, 10-2638 at p. 4, 60 So.3d at 618 ; Love, 00-3347 at pp. 2-3, 847 So.2d at 1202-03. The district attorney essentially "grant[ed] himself a continuance that had been denied by the trial court." See Love, 00-3347 at p. 5, 847 So.2d at 1204. By doing so, the district attorney "can be said to have 'flaunted' the state's unique power and authority that the defense does not also possess." King, 10-2638 at p. 6, 60 So.3d at 618.
This jurisprudence recognizes the "frequent collisions" that occur between the prosecutorial authority of the district attorney and the power of the trial court to manage its docket. See King, 10-2638 at p. 5, 60 So.3d at 618 ; Love, 00-3347 at pp. 2-3, 847 So.2d at 1202-03 ; State v. Hayes, 10-1538, p. 15 (La. App. 4 Cir. 9/1/11), 75 So.3d 8, 11, writ denied, 11-2144 (La. 3/2/12), 83 So.3d 1043. While the district attorney has plenary control over criminal prosecutions, the trial court has the authority and duty to require criminal proceedings be conducted in an orderly and expeditious manner and to control the proceedings to ensure justice is done. See La. C. Cr. P. art. 17. The trial court sets the trial date, which can only be continued by order of the trial court. See La. C. Cr. P. arts. 702, 707 -14. While the cited articles appear to clearly delineate the authority of the district attorney and the trial court in docketing, then managing a criminal case, conflicts nevertheless arise in the exercise of these respective grants of authority.
When a defendant seeks to quash a reinstated prosecution because the district attorney allegedly flaunted his authority, the issue encompasses more than simply balancing the respective authorities of the trial court and the district attorney. The requested remedy-the dismissal of a prosecution-is a serious consequence that, unlike the exclusionary rule or granting a new trial, means a defendant who may be guilty of a serious crime is freed without being tried. See State v. Alfred, 337 So.2d 1049, 1057 (La. 1976) ; Hayes, 10-1538 at p. 8, 75 So.3d at 14 (citing Barker v. Wingo, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972) ). Overzealous application of this remedy by the court infringes upon "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." Alfred, 337 So.2d at 1057 (quoting United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966) ).
Because of the severe consequences of a court dismissing a prosecution that is neither time-barred nor precluded by the right to a speedy trial under the Sixth Amendment, the Louisiana Supreme Court has articulated that a motion to quash should be granted only when the state exercises its authority such that it not only disrupts the trial court proceedings or challenges the court's authority to manage its docket, but also "significantly *1097 disadvantages the defense at any forthcoming trial." King, 10-2638 at p. 6, 60 So.3d at 619. According to the Louisiana Supreme Court, to meet this burden, the defendant must prove the district attorney flaunted his authority "for reasons that show that he wants to favor the [s]tate at the expense of the defendant, such as putting the defendant at risk of losing witnesses." Batiste, 05-1571 at p. 5, 939 So.2d at 1249 ; Love, 00-3347 at p. 14, 847 So.2d at 1209. A showing of "specific prejudice" to the defense is essential. See King, 10-2638 at pp. 7-8, 60 So.3d at 619.
Although not expressly stated by the Louisiana Supreme Court, this standard is derived from the defendant's constitutional right to due process under the federal and state constitutions. See U.S. Const. amends. V and XIV ; La. Const. art. I, § 2. Thus, our task in applying the proper standard in this case is guided by jurisprudence from the United States Supreme Court, which defines the right to due process and addresses alleged violations thereof resulting from exercises of prosecutorial discretion.
The Due Process Clause guarantees that a criminal defendant will be treated with "that fundamental fairness essential to the very concept of justice." See United States v. Valenzuela-Bernal, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982) (quoting Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941) ). Fundamental fairness means a fair trial in a fair tribunal. See State v. Nunez, 15-1473, p. 7 (La. 1/27/16), 187 So.3d 964, 969. To declare a denial of due process, a court must find that the absence of fundamental fairness fatally infected the trial, that is, the acts that occurred were so egregious as to necessarily prevent a fair trial. See Valenzuela-Bernal, 458 U.S. at 872, 102 S.Ct. at 3449.
When a due process violation is asserted relative to the manner in which a criminal defendant was indicted or charged, the United States Supreme Court has cautioned that courts must be mindful of the limited nature of review:
[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining due process, to impose on law enforcement officials our personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. Our task is more circumscribed. We are to determine only whether the action complained of ... violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.
United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977) (citations and internal quotation marks omitted) (the Court ultimately held that the government did not violate the defendant's due process rights by delaying indictment until 18 months after commission of the offense, where delay was purportedly due to the government's efforts to identify additional perpetrators).
In United States v. Marion, 404 U.S. 307, 308, 92 S.Ct. 455, 457, 30 L.Ed.2d 468 (1971), the Supreme Court addressed a motion to dismiss a prosecution based on allegations a prosecutor violated the defendants' due process rights by negligently delaying an indictment. The Court observed that the prosecutor's actions warrant a dismissal under the Due Process Clause only "if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the *1098 delay was an intentional device to gain tactical advantage over the accused." Marion, 404 U.S. at 324, 92 S.Ct. at 465 (emphasis added). The Court repeatedly stated that "actual prejudice" is necessary and that "no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." Marion, 404 U.S. at 324-25, 92 S.Ct. at 465. Reversing the trial court's dismissal of the case, the Supreme Court found "[n]o actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them." Marion, 404 U.S. at 325, 92 S.Ct. at 466. Later, in Lovasco, the Supreme Court recognized that while Marion makes clear that proof of prejudice is a necessary element of a due process claim, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Lovasco, 431 U.S. at 790, 97 S.Ct. at 2048-49 (emphasis added).
With this additional guidance from the United States Supreme Court, and consistent with the cited decisions from the Louisiana Supreme Court, we find that a defendant seeking to quash a prosecution based upon an alleged violation of his constitutional right to due process, arising out of an exercise of prosecutorial discretion, must show: (1) the state exercised its authority for the purpose of gaining a tactical advantage over the defendant, and (2) the state's action caused substantial prejudice to the defendant's constitutional right to a fair trial. See Marion, 404 U.S. at 324, 92 S.Ct. at 465 ; Lovasco, 431 U.S. at 790, 97 S.Ct. at 2048-49 ; King, 10-2638 at pp. 5-6, 60 So.3d at 618-19 ; Batiste, 05-1571 at pp. 5-6, 939 So.2d at 1249 ; Love, 00-3347 at p. 14, 847 So.2d at 1209 ; Hayes, 10-1538 at pp. 8-9, 75 So.3d at 14. To prevail under this due process standard, it is not sufficient to show the state dismissed a prosecution merely because it believed the dismissal was in the state's best interest. The record must establish the state dismissed the prosecution "for the purpose of" imposing a significant disadvantage on the defendant, and, as a result, the defendant's right to a fair trial was substantially prejudiced. See King, 10-2638 at p. 6, 60 So.3d at 618-19 ; Batiste, 05-1571 at p. 5, 939 So.2d at 1249 ; Love, 00-3347 at p. 14, 847 So.2d at 1209.[4]
Motions to quash on these grounds should be decided on a case-by-case basis, and the trial court's judgment should not be reversed in the absence of an abuse of discretion. See Batiste, 05-1571 at p. 5, 939 So.2d at 1249 ; Love, 00-3347 at p. 8, 847 So.2d at 1206. The trial court's legal findings, however, are subject to de novo review. State v. Gray, 16-0687, p. 4 (La. 3/15/17), 218 So.3d 40, 43.
Here, the defendant argues the state violated his right to due process by dismissing and reinstating the prosecution "because it didn't like the way voir dire was going, was unhappy with the composition of the jury, and was unhappy with the *1099 [trial] court's rulings." The state's actions, according to the defendant, prejudiced his defense because he will incur additional attorney fees to defend the new prosecution, and he cannot afford to retain a jury consultant for a second trial. The defendant also maintains his voir dire will not be as successful now because the prosecution "knows what to expect." The state counters that it acted in good faith and dismissed the prosecution solely in response to the jury pool being tainted by improper questions from the defendant's attorney during voir dire.
The record does not reflect that the state rebutted the defendant's showing that he was substantially prejudiced by the nolle prosequi and reinstitution of prosecution. To the contrary, it establishes a violation of the defendant's right to due process. The state did not file an emergency writ nor seek a stay from this court regarding the trial court's rulings on its voir dire objections and post-voir dire motions. If the defendant had been caught in the state's position, his only recourse would have been such appellate review. See Love, 00-3347 at p. 21, 847 So.2d at 1214 (Weimer, J., concurring in part and dissenting in part).
The trial court had the advantage of observing the actions of the state firsthand in determining whether the state's actions violated the defendant's due process rights. See Batiste, 05-1571 at p. 4, 939 So.2d at 1253 (Weimer, J., dissenting). Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. Love, 00-3347 at pp. 9-10, 847 So.2d at 1206. After a thorough review of the record before us and considering the law and the specific facts presented by this case, we cannot say that the trial court abused its discretion in granting the defendant's motion to quash the bill of information. We therefore find that the ruling of the trial court should be upheld.
AFFIRMED.
Crain G., Dissents and assigns reason.
I believe the trial court abused its discretion in granting the defendant's motion to quash the bill of information. I agree the refiled prosecution is not time-barred, expressly prohibited by the Code of Criminal Procedure, or violative of the prohibition against double jeopardy. Absent the existence of any of those bars, I agree the proper analytical framework for the defendant's assertion that the refiled prosecution should be prohibited is under the constitutional right to due process. I further agree that under that standard, the proper inquiry is whether the state exercised its prosecutorial discretion (1) for the purpose of gaining a tactical advantage over the defendant, and (2) to the substantial prejudice of the defendants' constitutional right to a fair trial. The burden of proof is upon the defendant to prove that the prosecutor abused his discretion by refiling the prosecution. I respectfully disagree with the majority's conclusion that the defendant met his burden in this case.
The evidence supports the prosecutor's good faith belief that the jury pool was being improperly tainted. A party may not question or pose hypothetical scenarios to a prospective juror that demand a commitment or pre-judgment from the juror or pries into the juror's opinions about issues to be resolved in the case. State v. Holmes, 06-2988 (La. 12/2/08), 5 So.3d 42, 80. Counsel cannot question prospective jurors concerning their reaction to evidence that *1100 might be received at trial. Holmes, 5 So.3d at 80.
While I express no opinion on the merits of the state's objections to defense counsel's voir dire, the concerns expressed by the state appear to have some basis in the record and law, thus supporting the claim of good faith. Many of the objectionable questions arguably seek opinions about issues to be resolved in the case or solicit a reaction to possible evidence. The state, before dismissing the prosecution, attempted to curtail the perceived damage to the jury pool. The state initially objected during voir dire, without success. The state moved for a mistrial, which was denied. The state filed a motion to dismiss the jury pool, which was denied. The state then requested a stay of the proceeding, but that too was denied. After exhausting these avenues of relief, the state chose to dismiss the prosecution without prejudice.[1]
There is no suggestion the state dismissed and reinstated the prosecution to increase the defendant's attorney fees, to deprive him of a jury consultant, or to otherwise harass him. There is no suggestion the state was "whipsawing defense witnesses by forcing them to make repeated but futile trips to the courthouse," or intended to "to wear down the defendant" and make him more inclined to consider a plea bargain. See State v. King , 10-2638 (La. 5/6/11), 60 So.3d 615, 619 ; see also State v. Reaves, 376 So.2d 136, 138 (La. 1979). Finally, there is no suggestion the state used its dismissal authority to forum shop. In fact, the reinstated prosecution was assigned to the same trial court division as the original prosecution. Upon this record, the state did not seek to gain a tactical advantage, but was in good faith in dismissing the prosecution without prejudice.
The record also fails to establish that the defendant's right to a fair trial was substantially prejudiced by dismissing and refiling the prosecution. Although the defendant may incur costs to defend the reinstated prosecution, he neither alleged nor proved any impairment of his right to counsel or that he will be significantly disadvantaged without a jury consultant. See U.S. Const. Amends. VI and XIV ; La. Const. Art. 1, § 13 ; Moore v. Johnson, 225 F.3d 495, 503 (5th Cir. 2000) ("[A] defendant does not lack 'an adequate opportunity to present [his] claims fairly' because he has been denied a jury consultant. Communicating with the jury is a quintessential responsibility of counsel.") The contention that voir dire for the defendant will be less effective at a second trial is purely speculative and cannot support a finding that his right to a fair trial has been substantially prejudiced. His procedural posture at the trial of the refiled prosecution is analogous to the procedural posture of a defendant following the granting of a motion for new trial.
By dismissing and refiling the bill of information, the state exercised a right expressly recognized by law. See La. Code Crim. Pro. arts. 576, 691, and 693. While this authority is not without limits, we are not at liberty to abort a criminal prosecution simply because we may disagree with the district attorney's judgment. See Lovasco, 431 U.S. at 790, 97 S.Ct. at 2049. The majority precludes the prosecution of the defendant on the charge of aggravated crime against nature. The cases reversing *1101 lower court decisions that have similarly quashed prosecutions because the prosecution allegedly "flaunted" its authority are legion,[2] but I have not found a single Louisiana case where quashing the prosecution on that basis was allowed to stand. The quashing of the subject prosecution should likewise not stand. The defendant failed to prove that the dismissal and refiling of this prosecution substantially prejudiced his right to a fair trial. The record does not establish a violation of the defendant's right to due process. I believe the trial court abused its discretion in granting the motion to quash the bill of information, and I respectfully dissent.

Other questions or comments prompting objections included revealing the victim's age and stating at side bar he intended to ask prospective jurors how their decision might be affected by the defendant's criminal history of two felony convictions. After being cautioned to "tread softly," defense counsel asked the panel if they would prejudge "a person" with two felony drug convictions. The state objected, but was again overruled.

Notably, La. C. Cr. P. art. 693 bars a subsequent prosecution if the dismissal is entered without the defendant's consent "after the first witness is sworn," while La. C. Cr. P. art. 592 provides that "jeopardy begins when the jury panel is sworn." Because the subject dismissal was entered before a jury was sworn, we make no attempt to reconcile or further interpret these provisions.

Louisiana Code of Criminal Procedure article 576, which allows a new prosecution to be filed within six months from the dismissal of a prior prosecution based on the same facts, provides that the new prosecution "shall not be instituted under this article ... for the purpose of avoiding the time limitation for commencement of trial established by Article 578."

If the state engages in an abusive practice that is per se unconstitutional, such as forum shopping or harassment of a defendant through repeated filings of groundless charges, the refiling of the prosecution is presumptively barred by the Due Process Clause. See e.g. Nunez, 15-1473 at pp. 7-8, 187 So.3d at 970 (due process requires that felony cases be allotted for trial on a random or rotating basis that does not vest the district attorney with power to choose the judge for a particular case). For an overview of jurisprudence from other jurisdictions in accord, see State v. Morgan, 2001 UT 87, p. 16, 34 P.3d 767, 771 (Utah 2001) ("[W]hen potential abusive practices are involved, the presumption is that due process will bar refiling.").

The majority finds significance in the fact that the state could have sought emergency relief and a stay from this court to correct the alleged error by the trial court. However, we are not required to determine whether the voluntary dismissal was the state's only or last option. Rather, the question to be answered is whether the state dismissed the prosecution "for the purpose of" gaining a tactical advantage over the defendant and, in doing so, substantially prejudiced his right to a fair trial.

See King, 60 So.3d at 620 ; State v. Batiste, 05-1571 (La. 10/17/06), 939 So.2d 1245, 1249-50 ; State v. Roach, 10-0991 (La. App. 1 Cir. 12/22/10), 68 So.3d 558, 563, writ denied, 11-1913 (La. 2/3/12), 79 So.3d 1025 ; State v. Vernell, 10-0990 (La. App. 1 Cir. 12/22/10), 68 So.3d 553, 557, writ denied, 11-1912 (La. 2/3/12), 79 So.3d 1025 ; State v. Jones, 15-0688 (La. App. 4 Cir. 10/28/15), 178 So.3d 1112, 1116 ; State v. Glover, 11-1167 (La. App. 4 Cir. 6/27/12), 2012 WL 4760786 ; State v. Keeling, 11-0945 (La. App. 4 Cir. 6/13/12), 96 So.3d 596, 600 ; State v. Luther, 11-1003 (La. App. 4 Cir. 5/9/12), 91 So.3d 560, 564 ; State v. Williams, 11-0946 (La. App. 4 Cir. 4/11/12), 89 So.3d 422, 427 ; State v. Daffner, 11-0511 (La. App. 4 Cir. 10/26/11), 2011 WL 9160396 ; State v. Hayes, 10-1538 (La. App. 4 Cir. 9/1/11), 75 So.3d 8, 17, writ denied, 11-2144 (La. 3/2/12), 83 So.3d 1043 ; State v. Thomas, 07-1473 (La. App. 4 Cir. 5/21/08), 2008 WL 8927871 ; State v. Ross, 06-1328 (La. App. 4 Cir. 3/14/07), 955 So.2d 167, 172, writ denied, 07-1027 (La. 5/9/08), 980 So.2d 681 ; State v. Stevenson, 06-1094 (La. App. 4 Cir. 1/31/07), 952 So.2d 742, 744 ; State v. Dees, 06-1198 (La. App. 4 Cir. 1/10/07), 950 So.2d 50, 54 ; State v. Reddick, 05-1143 (La. App. 4 Cir. 11/8/06), 944 So.2d 751, 753, writ denied, 06-2907 (La. 8/31/07), 962 So.2d 426 ; State v. Ordonez, 14-186 (La. App. 5 Cir. 9/24/14), 151 So.3d 94, 100.