# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #45

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the 22nd day of October, 2019, are as follows:

**BY GENOVESE, J.:**

*2019-KK-00367*    *STATE OF LOUISIANA VS. FRED REIMONENQ* (Parish of Orleans)

This case involves the authority of the district attorney to dismiss and reinstitute criminal prosecutions. We granted writs to determine whether fundamental fairness and due process prohibit the state from dismissing and reinstituting criminal charges in order to circumvent the normal order of criminal proceedings. Specifically, the district attorney in this case dismissed and reinstituted charges against defendant in response to two adverse rulings in the trial court. The state refiled charges without ever challenging the rulings in the appellate court, and defendant subsequently filed various motions in limine and a motion to quash, which the trial court denied. Because the actions of the state in this matter so undermine the authority of the trial court that it offends bedrock principles of fundamental fairness and due process, we reverse.

REVERSED.

Chief Judge Susan M. Chehardy of the Court of Appeal, Fifth Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

Retired Judge Michael Kirby appointed Justice ad hoc, sitting for Clark, J.

Weimer, J., concurs and assigns reasons.

Hughes, J., additionally concurs and assigns reasons.

Crichton, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2019-KK-0367

STATE OF LOUISIANA

VERSUS

FRED REIMONENQ

ON SUPERVISORY WRITS
TO THE CRIMINAL DISTRICT COURT,
PARISH OF ORLEANS

**GENOVESE, J.[1]**

This case involves the authority of the district attorney to dismiss and reinstitute criminal prosecutions. We granted writs to determine whether fundamental fairness and due process prohibit the state from dismissing and reinstituting criminal charges in order to circumvent the normal order of criminal proceedings. Specifically, the district attorney in this case dismissed and reinstituted charges against defendant in response to two adverse rulings in the trial court. The state refiled charges without ever challenging the rulings in the appellate court, and defendant subsequently filed various motions in limine and a motion to quash, which the trial court denied. Because the actions of the state in this matter so undermine the authority of the trial court that it offends bedrock principles of fundamental fairness and due process, we reverse.

**FACTS AND PROCEDURAL HISTORY**

On December 2, 2016, an Orleans Parish grand jury indicted defendant, Fred Reimonenq, on the charges of first degree rape, attempted first degree rape, and sexual battery of a victim under the age of 13. Trial was scheduled to begin on

---

[1] Chief Judge Susan M. Chehardy of the Court of Appeal, Fifth Circuit, assigned as Justice pro tempore, sitting for the vacancy in the Supreme Court's First District. Retired Judge Michael Kirby appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

September 25, 2018. On the Sunday before this trial date, the state presented defense counsel with a curriculum vitae—but apparently nothing further—from Anne Troy, Ph.D., a sexual assault nurse examiner, who it intended to call as an expert witness at trial.[2] On the morning of trial, the state provided defense counsel with formal notice of its intent to use Dr. Troy's testimony. Defendant filed a motion in limine to exclude any expert testimony that had not been properly noticed under La.C.Cr.P. art. 719, including Dr. Troy's testimony.

The trial court granted the defense's motion in limine and excluded Dr. Troy's testimony based on two findings. First, it found that the notice itself was deficient "in that it, *inter alia*, it doesn't provide a list, a material list upon which the conclusions of the expert witness are based . . . ." The state then attempted to verbally supplement its notice, informing the court that "[t]he evidence upon which the expert's opinion is going to be based has previously been provided to [d]efense counsel." The court disallowed any attempt at supplementation based upon its second finding that there was "a timing issue" that still made the late notice "prejudicial to the [d]efense and [did] not afford the [d]efense the opportunity to conduct whatever defensive positions it might otherwise be able to take had it had more time . . . ." The state noted its intent to apply for supervisory writs, but did not do so, and, instead, opted to enter a *nolle prosequi*.[3]

Two days later, on September 27, 2018, the state filed a new indictment on the same charges. On October 18, 2018, defendant appeared for arraignment and orally moved to adopt all previous filings and motions from the original case, and trial was set for December 3, 2018. On November 27, 2018, the state filed its supplemental notice pursuant to La.C.Cr.P. art. 719 with respect to Dr. Troy's

---

[2] It appears that Dr. Troy did not actually treat the victim in the instant case, but would be called to testify as to why the victim's forensic interviews presented credible claims of sexual abuse.

[3] From a later hearing transcript, it appears that the state made this decision at some point during voir dire.

testimony. On the morning of trial, defense counsel filed a supplemental motion in limine regarding Dr. Troy's testimony and a related motion to quash.

In argument on the motion to quash, defense counsel noted that the state's decision to dismiss and reinstitute criminal charges is a power that defendant does not have. He urged that this Court's precedent bars the state from flaunting its power by essentially granting itself a continuance in a way that substantially prejudices defendant's right to a fair trial. Defense counsel further proposed that the state's supplemental notice was still defective because it was filed only six days before the new trial date, and he could not procure an expert in that brief period of time. Defense counsel described the resulting prejudice as follows:

> Further, the defendant is substantially prejudiced because on the day of his trial, when he was ready to go forward, he was prepared to go forward with the State having no expert because they had [not] noticed an expert. Therefore, now, we are in a case where the State is trying to get an expert at the last minute again. . . .
>
> They had 42 days at one point, they had 67 days at another point, and they simply waited until six days beforehand. . . .

The state responded that defendant had failed to describe in any way how the "presentation of his defense has been significantly disadvantaged from September until today." Rather, the state urged that the more apt issue to address was the one presented by the motion in limine: whether the supplemental notice was sufficient to meet the requirements of La.C.Cr.P. art. 719. The defense replied that the prejudice was in the denial of defendant's right to a jury trial on the original trial date, which occurred when the state abused the process by entering a *nolle prosequi* in the face of an unfavorable evidentiary ruling.

The trial court denied defendant's motion to quash without elaboration. However, the court ordered the state to supplement its expert notice.

## DISCUSSION

District attorneys are imbued with vast authority over criminal prosecutions—they alone determine whom, when, and how they shall prosecute and may dismiss an indictment or a count in an indictment at their discretion without leave of court. *See* La. Const. art. V, § 26(B); La.C.Cr. P. art. 61. Indeed, they alone determine whether to dismiss a case. *State v. Sykes*, 364 So.2d 1293, 1297 (La. 1978). A dismissal is generally not a bar to a subsequent prosecution for the same offense.[4] However, a district attorney's exercise of this power cannot impinge on the accused's right to a speedy trial[5] because that right is "'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184, 33 L. Ed. 2d 101 (1972).

This Court has primarily explored the limits of the district attorney's ability to dismiss and reinstitute criminal charges through the speedy trial lens, or more generally, the delay caused when a district attorney dismisses charges in response to a denied request for a continuance. *See State v. King*, 10-2638, (La. 5/6/11), 60 So.3d 615, (per curiam); *State v. Batiste*, 05-1571, (La. 10/17/06), 939 So.2d 1245; *State v. Love*, 00-3347, (La. 5/23/03), 847 So.2d 1198. In *Love*, the state entered an order of *nolle prosequi* when the state's witness suffered a heart attack during voir dire, and the trial court denied the state's request for a continuance. This Court held that: (1) the unavailability of a state witness was a legitimate reason for delaying trial under the Speedy Trial Clause; (2) the record supported the trial court's decision to deny the state's motion for continuance based on the unavailability of the state's witness for valid medical reasons; (3) the trial court acted within its discretion in

---

[4] The statutory exceptions to this rule are when the dismissal is entered (1) without the defendant's consent after the first witness is sworn at the trial, and (2) after a city court conviction is appealed to the district court for a trial de novo. *See* La.C.Cr.P. art. 693. Neither exception is applicable in this case.

[5] A new prosecution on the same facts must be instituted within the time established for the charged offense, or within six months from the date of dismissal of a timely instituted prosecution, whichever is longer. *See* La.C.Cr.P. art. 576.

denying defendant's motion to quash; (4) a 22-month delay in prosecuting defendant was presumptively prejudicial; but, (5) defendant's right to a speedy trial was not violated. Under the circumstances presented in *Love*, this Court found that "the State did not seek to gain an unfair advantage over the defendant." *Love*, 00-3347, p. 12, 847 So.2d at 1208.

In *Batiste*, the state entered an order of *nolle prosequi* because the victim was not present for trial and was unsure whether she wanted to go forward with her testimony, and then reinstituted the charge a month later. Defendant complained that he suffered a speedy trial violation. Under the circumstances presented in *Batiste*, this Court found that "there was a legitimate reason for the nolle prosequi in this case," and "the record reveals no intentional delay on the State's part for the purpose of gaining a tactical advantage." *Batiste*, 05-1571, p. 6–7, 939 So.2d at 1249–50. Thus, the *Batiste* court found there was "no indication the district attorney was flaunting his authority at the expense of the defendant . . . ." *Id.*, 05-1571, pp. 5–6, 939 So.2d at 1249.

In *King*, the state entered an order of *nolle prosequi* after a bank failed to comply with its subpoena for records, and the trial court denied its request for a continuance. The state later reinstituted the charges. Quoting from *State v. Love*, this Court found as follows: "In situations where it is evident that the district attorney is flaunting his authority for reasons that show that he wants to favor the State at the expense of the defendant, such as putting the defendant at risk of losing witnesses, the trial court should grant a motion to quash[,] and an appellate court can appropriately reverse a ruling denying a motion to quash in such a situation." *King*, 10-2638, pp. 5–6, 60 So.3d at 618 (quoting *Love*, 00-3347, p. 14, 847 So.2d at 1209). This Court further found:

> [T]he record fails to suggest that the state simply sought a tactical advantage over the defense, or that it was whipsawing defense

witnesses by forcing them to make repeated but futile trips to the courthouse, *see State v. Reaves*, 376 So.2d 136, 138 (La.1979), as opposed to struggling to put its case together by identifying and summoning the appropriate witnesses. Nor does the record support an inference that the state delayed matters to wear down the defendant and incline him to reconsider the rejected plea bargain, as the delays in the first year of the proceedings were attributable as much, if not more, to the defense as they were to the state, and, if anything, worked to defendant's advantage, as the state reduced by over half its initial plea bargain offer of seven years imprisonment at hard labor.

*King*, 10-2638, p. 7, 60 So.3d at 619. Ultimately, the *King* court concluded:

To the extent that the defense motion to quash did not assert violation of defendant's Sixth Amendment speedy trial rights, and in any event claimed no prejudice to his defense of the case arising out of the delay occasioned by the state's dismissal and immediate reinstitution of the prosecution to force a second continuance of trial, the district court erred in granting the motion and dismissing the prosecution with prejudice.

*King*, 10-2638, p. 8, 60 So.3d at 620.

However, the state's dismissal and reinstitution of charges in this matter is distinguishable in nature from those in *King*, *Batiste*, and *Love*. The aforementioned cases involved the absence of a witness or exhibit that was crucial to the state's case. Here, the witness cannot be characterized as absent; rather, the witness's testimony was excluded by the trial court as a result of the state's failure to follow the applicable procedures. Thus, the state not only gained a continuance, but also evaded the trial court's wholly correct evidentiary ruling without ever seeking appellate review. While we recognize the vast authority vested in district attorneys as set forth in La.C.Cr.P. arts. 61 and 691, we do not find that those articles permit the unfettered exercise of this authority to undermine trial court proceedings and evade appellate review.

[I]t is well established that denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."

*Duncan v. Henry*, 513 U.S. 364, 370, n.1, 115 S. Ct. 887, 890, 130 L. Ed. 2d 865 (1995) (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)).

Louisiana Constitution Article II, § 2 provides that "no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." As noted above, under La.C.Cr.P. art. 61, district attorneys have sole discretion in determining when and how to prosecute an accused. However, once charges are brought, district attorneys become litigants in a trial court, and their authority under Art. 61 must co-exist with the provisions of the Code vesting the trial court with the "duty to require that criminal proceedings . . . be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La.C.Cr.P. art. 17. Pursuant to La.C.Cr.P. art. 707 et seq., this authority includes the authority to set a case for trial and to grant a continuance. A natural tension thus arises between the authority of the courts and the authority of district attorneys. Here, we seek to balance and harmonize these sometimes-conflicting and broad grants of authority in a manner that accords with our state and federal due process guarantees.

Inherent in justice and the concept of fundamental fairness is ensuring a "balance of forces between the accused and his accuser." *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S. Ct. 2208, 2212, 37 L. Ed. 2d 82 (1973). In its brief, the state openly acknowledges it could have sought writs from the appellate court and simply declined to do so. The state also suggests that dismissing and reinstituting these charges was simply "to put its case together." We find that in this case, the state's exercise of its statutory right under La.C.Cr.P. arts. 691 and 61 to dismiss and

reinstitute charges against defendant upset this "balance of forces" to such a degree that it violates defendant's right to due process and fundamental fairness.[6]

The question now turns to the remedies available when, as here, the state wields its power to dismiss and reinstitute charges in a way that violates a defendant's right to due process and fundamental fairness in the proceedings against him. Necessarily, such remedies will be specific and fact intensive. However, in this case, the appropriate remedy presents itself in defendant's pleadings. The state abused its authority to dismiss and reinstitute charges against defendant in order to give itself a continuance and reverse the trial court's ruling excluding its expert witness. Thus, we grant defendant's motion to quash. Nothing, however, would appear to preclude the state from reinstituting the charges in accordance with governing laws. However, we also find it necessary and requisite to reinstate the status quo before the state misused its authority. Thus, we further prohibit the state from utilizing this expert witness or any other expert witness meant to bolster the credibility of the testifying child victim should it choose to reinstitute the prosecution.

## CONCLUSION

For the reasons set forth above, we find that the state violated defendant's right to due process and fundamental fairness when it exercised its authority to dismiss and reinstitute a prosecution not only to gain a continuance, but to nullify a trial court's correct evidentiary ruling and flout appellate review.

## DECREE

---

[6] As noted by defendant in his brief, he is confined to the process of writ review when he receives adverse rulings in the trial court. The state all but admitted at oral argument it chose to dismiss the prosecution because applying for writs is a more arduous task. The legislature could not have intended to enact La.C.Cr.P. art. 61 to allow the state to bypass review of the constitutionally and statutorily created appellate process.

For the reasons stated herein, the judgment of the trial court is reversed and defendant's motion to quash is granted. We further prohibit the state from offering the testimony of Dr. Anne Troy or any other expert who may offer comparable testimony.

**REVERSED.**

SUPREME COURT OF LOUISIANA

NO. 2019-KK-0367

STATE OF LOUISIANA

VERSUS

FRED REIMONENQ

*ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT COURT,
PARISH OF ORLEANS*

**WEIMER, J.**, concurs.

I concur in the result and agree with the analysis which results in the case-and-fact-specific ruling prohibiting the state from utilizing the expert in any future proceedings. Indeed, that result was foreshadowed by this court's denial of writs in a case similar to this one in which a *nolle prosequi* was entered after trial commenced. **State v. Papizan**, 17-0028 (La.App. 1 Cir. 11/2/17), 256 So.3d 1091, writ denied, 17-2028 (La. 10/29/18), 255 So.3d 572. In denying writs in **Papizan**, this court refused to condone the extraordinary use of the *nolle prosequi* (in lieu of an emergency writ or request for a stay) to allow a district attorney to erode the trial court's authority and obtain a "re-do" of adverse trial court rulings during *voir dire*, and, in effect, obtain a new jury panel (at no small cost to jurors and taxpayers) where such an avenue was not available to the defendant. The result reached today confirms that this court will not allow the use of the "*nolle prosequi* and reinstitution" practice for obtaining an unfair tactical advantage in prosecutions.

I write separately because I dissented in the line of cases cited by the majority, **State v. Love**, 00-3347 (La. 5/23/03), 847 So.2d 1198, **State v. Batiste**, 05-1571 (La. 10/17/06), 939 So.2d 1245, and **State v. King**, 10-2638 (La. 5/6/11), 60 So.3d 615, and wish to emphasize that I do not view the position voiced in those dissents as

1

limiting the authority of the district attorney, but rather as curbing a practice not authorized by the Code of Criminal Procedure: the use of "*nolle prosequi* and reinstitution" as a substitute for the codal provisions for securing a continuance and/or for reversing an adverse trial court ruling through appellate review.

As the majority correctly notes, the authority of the district attorney under the Code of Criminal Procedure, specifically La. C.Cr.P. arts. 61 and 691, must be balanced and harmonized with the authority and duty of the trial court to conduct criminal proceedings "with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La. C.Cr.P. art. 17; see also **State v. Reimonenq**, 19-0367, slip op. at 7 (La. __/__/19). This conclusion stems from the nature of a code, which is, by definition, a compilation or collection of laws. As such, it must be interpreted and evaluated by taking into account *all* of its provisions, including, especially, those that touch upon the same subject matter. In this case, while it is clear that La. C.Cr.P. arts. 61 and 691 confer upon the district attorney the authority to dismiss and reinstitute charges, the articles on continuances and the procedure for obtaining them, La. C.Cr.P. art. 707, *et seq.*, and the articles which set forth the inherent power and authority of courts to control their dockets and to insure the fair and impartial administration of justice, La. C.Cr.P. arts. 2 and 17, must also be considered. The district attorney's authority under La. C.Cr.P. art. 61 is but one provision in the Code of Criminal Procedure. We cannot elevate that one provision to the exclusion of all others but must look to the Code as a whole. We must read, and interpret, the law in its entirety.

By virtue of La. C.Cr.P. art. 61, the district attorney has the right and authority to determine "whom, when, and how he shall prosecute." But what is encompassed within this charging power is not clearly delineated. A district attorney possesses two

2

very different charging powers: inquisitorial charging power and adversarial charging power.

> Inquisitorial charging powers occur *before* the prosecutor has filed charges and begun the adjudicative process. These "classic" prosecutorial powers include the authority to decide what, if any, charges to file. During this inquisitorial phase, judicial regulation is not just infeasible, it also creates legitimate separation of powers problems. Adversarial charging powers, by contrast, are only exercised after a prosecutor files an initial charge and begins the adjudicative process. Adversarial charging powers include the power to enhance, reduce, dismiss, divert, and *nolle*-and-reinstitute a charge. At this stage, the prosecutor is no longer acting as an inquisitor making policy decisions; instead, the prosecutor is acting as a party-opponent in an adversarial proceeding.

Joseph A. Thorp, ***Nolle*-and-Reinstitution: Opening the Door to Regulation of Charging Powers**, 71 N.Y.U. Ann. Surv. Am. L. 429, 431 (2016) (footnotes omitted; emphasis in original). The distinction between the two charging powers is important and, in fact, is implicitly recognized in the Code of Criminal Procedure. Under La. C.Cr.P. art. 61, the district attorney has vast discretion to determine whom to prosecute and what charges to bring (the inquisitorial charging power). Once charges are brought, the authority of the district attorney (the adversarial charging power) is tempered by other provisions of the Code: the trial court's inherent power and authority "to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done," La. C.Cr.P. art. 17, in addition to the provisions which facilitate that goal (such as the rules setting forth the procedure for obtaining continuances, La. C.Cr.P. art. 707, *et seq.*). Indeed, according to our rules of codal interpretation, if provisions cannot be harmonized, specific provisions, such as those governing continuances, should prevail over more general provisions, such as those addressing the district attorney's broad authority. See **State v. Maduell**, 326 So.2d 820, 830 (La. 1976).

3

As the majority opinion acknowledges, once the district attorney makes a decision as to whom, when, and how to prosecute and invokes the authority of the court, a tension arises between the authority of the district attorney upon entering the courtroom and becoming a litigant, and the court, which is charged with insuring a level playing field such that the defendant's constitutionally guaranteed right to a fair trial is preserved. **Reimonenq**, 19-0367, slip op. at 7. It is here that a balance must be struck.

The misuse of the "*nolle prosequi* and reinsitution" practice during the adversarial stage of a proceeding presents two concerns. First, it presents a fundamental fairness and due process issue when a prosecutor chooses to forego available review of a trial court and simply start anew, an avenue that is not available to a defendant. ***Nolle*-and-Reinstitution**, 71 N.Y.U. Ann. Sur. Am. L. at 441.[1] Second, it presents a separation of powers issue, insofar as the "*nolle*-and-reinstitution" allows a prosecutor to grant him or herself a continuance, which is a "classic judicial power,"[2] and to obtain *de facto* control over the court's docket. ***Id.*** at 447-48.

Courts should not allow themselves to become the handmaidens of the district attorney when they have the authority and obligation to insure justice is achieved. To this end, this court cannot ignore the encroachment on the authority of the trial court that occurs when the district attorney terminates litigation which the district attorney perceives is not going in his or her favor. Once a matter is set for trial/enters the

---

[1] In **Papizan,** the appellate court recognized just such a due process violation where the state "did not file an emergency writ nor seek a stay ... regarding the trial court's rulings on its *voir dire* objections and post-*voir* motions," although "[i]f the defendant had been caught in the state's position, his only recourse would have been such appellate review." **Papizan**, 17-0028 at 10-11, 256 So.3d at 1099.

[2] "Authority over whether a party should be granted a continuance is an inherently judicial power, because it requires an 'adjudication' of an active ongoing case." ***Nolle*-and-Reinstitution**, 71 N.Y.U. Ann. Surv. Am. L. at 448.

4

adversarial stage, the district attorney's authority under La. C.Cr.P. arts. 61 and 691 must be balanced against the court's authority and obligation "to so control the proceedings that justice is done." See La. C.Cr.P. art. 17.

To accomplish the delicate balancing act that is required, I would once again propose the adoption of a shifting burden of proof that places the burden of showing that defendant was not prejudiced by a "*nolle prosequi* and reinstitution" on the state, as opposed to placing that burden on the shoulders of the defendant. See **Love**, 00-3347 at 4-5, 847 So.2d at 1215 (Weimer, J., concurring in part, dissenting in part); **Batiste**, 05-1571 at 1-2, 939 So.2d at 1253 (Weimer, J., dissenting); **King**, 10-2638 at 1, 60 So.3d at 620 (Weimer, J., dissenting). The rationale behind the adoption of such a rebuttable presumption of prejudice is simple.

> It is appropriate to allocate to the prosecution the burden of rebutting this presumption. The prosecutor is the only party in a position to prove that its need for this "extraordinary" power is legitimate. Defendants simply have no way of getting into the mind of the prosecutor and thus no way to meet a presumption. Prosecutors, on the other hand, are the only ones who will ever be able to prove they have clean hands. If the prosecutor is able to rebut the presumption against adversarial charging powers, the judiciary is experienced and comfortable conducting the second half of the analysis as well – a balancing test. Ironically, this balancing test strongly resembles the analysis for motions to continue, a judicial determination that prosecutors frequently avoid or defy by using the *nolle*-and-reinstitution power.

Thorp, *Nolle*-**and-Reinstitution**, 71 N.Y.U. Ann. Surv. Am. L. at 478 (footnotes omitted).

Imposing a rebuttable presumption of prejudice on the state when it seeks to exercise its "*nolle prosequi* and reinstitution" authority strikes an equilibrium between the authority of the district attorney and that of the trial court and protects against abuse of the "*nolle prosequi* and reinstitution" authority. Such a presumption

5

is not so much a limitation on the authority of the district attorney as a limitation on a potentially abusive practice. It effectuates a harmonization and balance between potentially competing provisions of the Code of Criminal Procedure, eliminates separation of powers concerns, ensures due process is achieved for the defendant, and demonstrates that the system is fair to both the state and the defendant.

**SUPREME COURT OF LOUISIANA**

**No. 2019-KK-00367**

**STATE OF LOUISIANA**

**VS.**

**FRED REIMONENQ**

On Supervisory Writ to the Criminal District Court,
Parish of Orleans

**Hughes, J., additionally concurs.**

I agree with the majority and write separately to emphasize that the dismissal in this case took place during jury selection.

Jurors are the most precious resource of the legal system. Their time and effort are not to be trifled with, and must take precedence over the convenience of lawyers and judges. Sacrificing a jury pool for a tactical advantage is wrong.

SUPREME COURT OF LOUISIANA

2019-KK-0367

STATE OF LOUISIANA

v.

FRED REIMONENQ

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT COURT,
PARISH OF ORLEANS

**Crichton, J. additionally concurs and assigns reasons:**

I join in the majority opinion. I write separately, recognizing that the district attorney has an "awesome amount of power in our justice system." *See State ex rel. Morgan v. State*, 15-100 (La. 10/19/16), 217 So. 3d 266, 277-78 (Crichton, J., additionally concurring). That power encompasses the "entire charge and control of every criminal prosecution" in his district, including the determination of "whom, when, and how he shall prosecute." La. C.Cr.P. art. 61. *See also* La. Const. art. 5 sec. 26(B). Though that authority may be curtailed when it operates "to the prejudice of a contrary constitutional mandate," even then it may only be curtailed with "due deference to the district attorney's constitutional prerogative." *Board of Com'rs of Orleans Levee Dist. v. Connick*, 94-3161, p.8 (La. 3/9/95), 64 So. 2d 1073, 1077. *See also State v. Roberson*, 14-1996 (La. 10/14/15), 179 So. 3d 563, 578-79 (Crichton, J., concurring). As the majority aptly notes, however, the district attorney's authority must coexist with other provisions of our Constitution and Code of Criminal Procedure, which requires balancing the various broad grants of authority in our state.

Notably, the abusive practice described by the majority here does not stand alone, but represents a "perennial practice of the Orleans Parish District Attorney [that] has been the subject of many writ applications to this Court." *State v. James*, 15-KK-1193 (La. 10/30/15), 182 So. 3d 27, 28 (Johnson, C.J., dissents from the writ denial and would grant). *See also id.*, 182 So. 3d at 29 ("While I respect the discretionary authority of the district attorney to dismiss and reinstitute indictments, I do not condone its abuse or its persistent unabated use in Orleans Parish," which "interferes with the trial court's inherent authority to control its docket.") (internal citations omitted) (Crichton, J., dissents from the writ denial and would grant). Particularly in light of this history, I fully agree with the majority that the district attorney abused its authority in this case.

2