# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 24-464

SINGH SIGNATURE STORES, INC.

VERSUS

LAFAYETTE PARISH COUNCIL AND LAFAYETTE CITY PARISH
CONSOLIDATED GOVERNMENT

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20231083
HONORABLE MICHELE S. BILLEAUD, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Van H. Kyzar, Candyce G. Perret, and Gary J. Ortego, Judges.

REVERSED; RENDERED;
AND REMANDED.

Emile Joseph, Jr.
Robert A. Robertson
Allen & Gooch, A Law Corporation
P.O. Box 81129
Lafayette, LA 70598-1129
(337) 291-1310
COUNSEL FOR PLAINTIFF/APPELLANT:
    Singh Signature Stores, Inc.

Patrick S. Ottinger
Lafayette City-Parish Attorney
P.O. Box 4017-C
Lafayette, LA 70502
(337) 291-8015
COUNSEL FOR DEFENDANTS/APPELLEES:
    Parish of Lafayette
    Lafayette City-Parish Consolidated Government

Daniel J. Gauthier
Becker & Hebert, LLC
201 Rue Beauregard
Lafayette, LA 70508
(337) 233-1987
COUNSEL FOR DEFENDANTS/APPELLEES:
    Parish of Lafayette
    Lafayette City-Parish Consolidated Government

**KYZAR, Judge.**

The plaintiff, Singh Signature Stores, Inc., appeals from the district court's affirmation of a decision by the Lafayette Parish Council, which granted an appeal and reversed the Lafayette Parish Planning Commission's grant of preliminary plat approval for its proposed subdivision of property. For the following reasons, we reverse, render, and remand.

## FACTS AND PROCEDURAL HISTORY

Singh Signature Stores, Inc. (Plaintiff), the owner and operator of Grab-N-Geaux convenience stores in south Louisiana, purchased property in Lafayette Parish (the Parish) with the intention of building and operating a convenience store with fuel sales (store). The property, located at the intersection of Fortune and Chemin Metairie Roads, is situated in an unincorporated area of the Parish, between the municipalities of Lafayette and Youngsville. As the area where the property is located is unincorporated, it is not zoned.

Prior to purchasing the property, Plaintiff submitted a pre-application sketch plan of its proposed development to the Lafayette City-Parish Consolidated Government's (LCG's) Community Development and Planning Department (DPD) to determine whether its plat conformed to the requirements of the Lafayette Development Code (LDC).[1] After revising its plat accordingly, Plaintiff purchased the property. It then filed an application for minor plat, which requested that an American with Disabilities Act (ADA) requirement be waived with regard to sidewalks. Following a November 8, 2022 public hearing before a Hearing Examiner, the minor plat and requested waiver were approved subject to compliance

---

[1] Plaintiff's plat application is entitled, "Mrs. Althe Duhon LeBlanc Partition, A-1."

with the LDC as well as thirteen conditions, two plat revisions, and nine comments/suggestions. The conditions set by the Department of Public Works, the Department of Traffic, Road, and Bridges, and the DPD included issues pertaining to construction, drainage, traffic, and the right-of-way and setbacks required for a proposed roundabout at the intersection of Fortune and Chemin Metairie Roads.

The matter was then set for approval by the Lafayette Parish Planning Commission (Commission) on the consent agenda of its December 12, 2022 hearing. However, due to opposition against the approval, the Commission removed the matter from its consent agenda and set it for public hearing during its January 9, 2023 meeting. Although an audio recording of this meeting is included in the appellate record, it is difficult at times to identify the speakers.

During the meeting, it was noted by Sharon Wagner, a DPD staff member, that Plaintiff's proposed convenience store was an allowed use as its property was located in an unincorporated area of the Parish. She recommended approval of the plat application subject to the same conditions, plat revisions, and suggestions/comments approved by the Hearing Examiner. It was stated several times by certain commissioners that the Commission could not deny Plaintiff's plat application based on its intended use of the property as a store was an allowed use in the unincorporated area of the Parish. They explained that the purpose of a preliminary plat is to establish the property's boundaries. It was also noted that Plaintiff had withdrawn its requested waiver pertaining to ADA-compliant sidewalks.

The Commission heard opposition from seven adjacent or nearby landowners, who objected to the presence of a store in their neighborhood and the effect it would have on drainage, traffic, environmental, and safety issues in their community. The

2

Commission eventually granted preliminary plat approval subject to the thirteen conditions, two plat revisions, and nine comments/suggestions approved by the Hearing Examiner.

On December 13, 2022, Sean McDaniel, an adjacent landowner, applied for an appeal of the Commission's decision for the following reasons: "Challenge of Obsolete Standards for Unincorporated Lafayette Parish[;] Drainage/Flood Issues[;] [and] Environmental/Health Concerns[.]" Thereafter, the appeal was set for hearing on February 15, 2023, before the Lafayette Parish Council (Parish Council). A video of that meeting is included in the appellate record.

At the start of the hearing, Council Member Kevin Naquin asked Mary Sliman, the DPD director, if Plaintiff's proposed store was an allowed use and if LCG would face liability for denying preliminary plat approval for an LDC-compliant plat. Without addressing the liability issue, Director Sliman stated that a store is an allowed use as Plaintiff's property is located in an unincorporated area of the Parish, which is not zoned. Thus, as long as the convenience store complies with the LDC land-use requirements of landscaping, fencing, and buffering, it is an allowed use. Director Sliman explained that the platting process creates a legal lot of record through the establishment of the subject property's boundaries and that a legal lot of record is required before any type of construction will be approved. She said that a final plat is only approved if the developer satisfies all of the conditions and plat revisions listed in the plat within two years of receiving preliminary plat approval.

Mr. McDaniel stated that despite the lack of regulations in the unincorporated areas of the Parish, the approval of a proposed development should be based on good judgment and common sense rather than the fact that the property is not zoned. In

3

this instance, he opined, approval of Plaintiff's proposed store was both a failure of sound judgment and inconsistent with smart development practices based on its proximity to the surrounding homes. Mr. McDaniel claimed that the location would place an unnecessary burden on him and his elderly neighbors as there is no fence large enough to shield them from the light and noise generated by a store and because the nearest fuel pump would be located twenty-five feet from his neighbor's house. He further claimed that the store would be the beginning of the end for his neighborhood as he and his neighbors would probably have to move. Finally, he argued that when he purchased his home twenty-three years ago, he did so with the expectation that his neighborhood would remain residential, not that a store would be located across from his home.

Plaintiff's counsel, Emile Joseph, Jr., and its engineer, Brooke Smith, spoke in opposition to the appeal. After outlining the procedural history of Plaintiff's plat application, Mr. Joseph stated that there is no Louisiana law authorizing the Parish Council to grant Mr. McDaniel's appeal. He reiterated that a plat application is the beginning of the process and that all concerns raised by the public regarding traffic, flooding, and environmental issues would be addressed in the development stage. Ms. Smith echoed that the platting process is only the first step in the development process and that all concerns raised by the public would be addressed after Plaintiff's plat was approved. She further stated that Plaintiff was seeking no waivers under the LDC, that it accepted all conditions set by the Hearing Examiner and the Planning Commission, and that it fully intended to comply with the LDC.

During public comment, twelve residents spoke in support of the appeal based on concerns pertaining to Plaintiff's intended use of the property for a store. These included increased traffic, flooding, drainage, benzene exposure, groundwater

4

contamination, and decreased property values. Concerns were also voiced regarding the effect the store would have on their quiet, closeknit, crime-free neighborhood as it would be the only commercial establishment in the neighborhood. They worried about the light and noise generated by the store and the health and safety of elderly, disabled neighbors who could not afford to move. They condemned the proposed store's location due to the fact that nine gas stations are located within a two-mile radius of Plaintiff's property. Many argued that they purchased their homes in the expectation that their neighborhood would remain residential. One resident questioned the effect that large supply trucks would have on the area's small two-lane roads, and another worried about the effect that the proposed roundabout would have on nearby landowners. Mr. McDaniel and other residents were also concerned that the store would add to the heavy traffic the community already experienced on the roads and intersection. The minutes of the meeting indicate that nine additional residents were present in support of the appeal, ninety-six residents had called in to support the appeal, and one resident called in to oppose the appeal.

During discussion, Josh Carlson, the Chair of the Parish Council, observed that Plaintiff's plat application complied with all LDC regulations. However, he noted that pursuant to LDC § 89-55(b)(1), the Commission should not have granted approval without first considering the store's impact on existing landowners and its possible environmental impact on the community. In his opinion, the Commission should be authorized to request an environmental impact study concerning the environmental threats a development poses to neighboring properties. However, Director Sliman stated that developers intending to construct stores are not required by the LDC to perform environmental impact studies regarding the effect their stores will have on nearby properties.

5

Mr. Carlson stated that he was against Plaintiff's proposed store as it would change the look and feel of the existing neighborhood. He pointed out that approval is only granted if a preliminary plat complies with the LDC and "is consistent with the Comprehensive Plan." LDC § 89-57(f)(1). It was his opinion that Plaintiff's plat application was inconsistent with LCG's Comprehensive Plan (the plan) and should be denied.[2]

In finding it inconsistent, Mr. Carlson quoted from the vision statement of the plan's Second Element, pertaining to community character:

> As it pertains to population, Lafayette's rich Cajun and Creole heritage, its creative scene and culture of innovation, and authentic "joie de vivre" combine to create a unique and attractive place. Combine these aspects with the built environment and that is the focus of the Community Character element – how the community looks and fees. This is of critical importance and is defined by how we protect, maintain, and create desirable neighborhoods, how we encourage compatible and diverse land uses, how we provide for ease of mobility, and how we protect cultural and natural resources.

PlanLafayette, p. xvii (June 10, 2014).

Accordingly, he opined that the Commission, before approving a preliminary plat, should protect existing neighborhoods by considering the look and feel of the community. He emphasized the importance of this protection based on the fourth goal of the plan's Third Element, pertaining to housing and neighborhoods, which is to "[p]rotect and revitalize neighborhoods and assets." *Id.* at xvii.

Mr. Carlson pointed out that Plaintiff's property is not located in a named subdivision, that the nearest commercial establishment is located half a mile away on Verot School Road, and that both sides of Fortune and Chemin Metairie Roads are lined with residences. He opined that the property rights of these landowners

---

[2] The Comprehensive Plan is entitled "PlanLafayette."

6

would not be protected if Plaintiff's development proceeded. Based on the Parish's expected growth, Mr. Carlson stressed the importance of protecting the property rights of homeowners that have lived in the neighborhood for ten to fifty years. He noted that he would feel different if Plaintiff had purchased an empty field rather than the subject lot and existing house, which Plaintiff demolished. Thus, it was his opinion that the existing homeowners' property rights were not protected by the LDC.

Council Member Bryan Tabor questioned the status of the roundabout and was told by Director Sliman that the roundabout was in the design stage but that the DPD had not contacted the adjacent landowners as the roundabout's right-of-way limits had not yet been determined. Based on these facts, Mr. Tabor felt that the Commission was "putting the cart before the horse" in granting preliminary plat approval to Plaintiff. He further enquired about the source of water for those homes near Plaintiff's property and was told that while some are on city water others have wells. Finally, Mr. Tabor questioned the circumstances surrounding Plaintiff's purchase of the property. Mr. McDaniel informed him that he and his neighbors only learned that the property had been purchased by Plaintiff several months after the fact.

Council Member John Guilbeau questioned whether the Commission considered the plan before approving the preliminary plat. He further stated that he wished to preserve and protect the neighborhood in question.

When discussion had concluded, Mr. Guilbeau moved to grant the appeal to reverse the preliminary plat approval, which was seconded by Mr. Tabor based on the water well issue, the roundabout, and the secretive manner in which Plaintiff

7

acquired the property. The Parish Council then voted four to one to disapprove the Commission's preliminary plat approval.

Following this decision, Plaintiff filed an appeal with the Fifteenth Judicial District Court as well as a petition seeking declaratory judgment, injunctive relief, mandamus relief, and damages, naming the Parish Council and LCG as defendants. Plaintiff alleged that as its minor plat satisfied all of the LDC's requirements, it was an application by right; thus, the Parish Council acted arbitrarily, capriciously, and unreasonably in denying its application, which decision amounted to an unconstitutional taking. Thus, it sought a declaratory judgment and a mandatory injunction ordering that the Parish Council approve its minor plat. Plaintiff further sought damages as a result of the Parish Council's arbitrary and capricious de facto zoning of its property as residential despite its location in an unincorporated area of Lafayette Parish. It further sought damages based on the Parish Council's violation of its due process and equal protection rights, which amounted to an unconstitutional taking without just compensation.

Pursuant to an April 7, 2023 order, the district court scheduled a hearing on Plaintiff's discovery motion and ordered the bifurcation of its appeal from its other claims, with the remaining claims held in abeyance pending the outcome of its appeal.[3] Thereafter, Plaintiff supplemented and amended its original appeal and petition by substituting the Parish of Lafayette as defendant in place of the Parish Council and by requesting that its appeal be granted.[4] It again supplemented and

---

[3] Although the record contains a memorandum in support of Plaintiff's motion to perform discovery, the actual discovery motion is not included in the record.

[4] Although paragraph "I" of the first supplemental and amended petition states that Plaintiff was removing the Parish Council as defendant and replacing it with the Parish of Lafayette, paragraph "1." of the original petition, as supplemented and amended, lists the Parish of Lafayette

8

amended its appeal and petition two days later, seeking a judgment declaring that it was not required to obtain preliminary plat approval before seeking a building permit as its property had already been platted pursuant to an act of exchange recorded on June 25, 1970.

Following a hearing on Plaintiff's motion to perform discovery, the district court rendered a July 31, 2023 judgment, granting in part and denying in part its motion. The district court allowed discovery in relation to Plaintiff's claims for declaratory judgment, injunctive and mandamus relief, and damages but denied discovery in relation to its appeal. Thereafter, the matter proceeded to a hearing on Plaintiff's appeal.

At the start of the hearing, Plaintiff orally requested that the district court reconsider its refusal to allow the introduction of evidence not considered by the Parish Council, which was denied. Following argument on Plaintiff's appeal, the district court orally denied the appeal, stating:

> Well, after having reviewed the entire record, I find that the record shows the parish council considered all of the factors required by the Lafayette Development Code, including the comprehensive plan, and after doing that the parish council denied the plat approval. I find there's no evidence that this decision was arbitrary and capricious; therefore, I uphold the findings of the Lafayette Parish Council.

A written judgment was rendered on May 21, 2024, denying Plaintiff's motion to reconsider its previous discovery motion and affirming the Parish Council's denial of its preliminary plat application. It is from this judgment that Plaintiff appeals.[5]

---

as defendant in place of both the Parish Council and LCG. However, based on the wording of paragraph "I," we find that Plaintiff did not remove LCG as a defendant.

[5] Plaintiff also filed an application for supervisory writs to this court, which was not considered. *Singh Signature Stores, Inc. v. Lafayette Par. Council*, 24-291 (La.App. 3 Cir. 7/8/24) (unpublished writ).

9

On appeal, Plaintiff raises the following three assignments of error:

I.  The trial court committed legal error, abused its discretion and/or was manifestly erroneous by refusing to allow Singh to introduce evidence in support of its claim that LCG was arbitrary and capricious, abused it authority and/or violated Singh's due process rights.

II. The trial court committed legal error, abused its discretion and/or was manifestly erroneous when it refusing [sic] to allow Singh to profer [sic] the testimony of Mary Sliman, Bonnie Anderson and Neil LeBouef.

III. The trial court abused its discretion, committed legal error and/or was manifestly erroneous when ruling LCG was not arbitrary, capricious, did not abuse its authority or violate Singh's due process rights when overturning the Hearing Examiner and Planning Commission's ruling and denying Singh's preliminary minor plat approval.

## OPINION

The authority to regulate land use is a power granted to local governmental subdivisions by La.Const. art. 6, § 17, which includes the authority to adopt land-use regulations, to create commissions to implement those regulations, and to review any decisions made by the commissions. As the implementor of land-use regulations, a planning commission is tasked with the responsibility of establishing and adopting a master plan, which is "a statement of public policy for the physical development of a parish or municipality[.]" La.R.S. 33:106(A); La.R.S. 33:101(1). A planning commission is further responsible for the adoption of regulations governing the subdivision of land within its jurisdiction. La.R.S. 33:112(A). As defined by La.R.S. 33:101(5)(a), subdivision is:

> [T]he division of a lot, tract, or parcel of land into two or more lots, plats, sites or other divisions of land for the purpose, whether immediate or future, of sale or of building development, and, with regard to parishes, for the purpose of sale or of building development for purposes other than agricultural. It includes resubdivision and, when appropriate to the context, relates to the process of subdividing or to the land or territory subdivided.

10

"[T]he act of approving or disapproving a subdivision plat" is a "legislative function involving the exercise of legislative discretion by the planning commission, based upon data presented to it[.]" La.R.S. 33:101.1. Such an act is further "subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, an excessive use of the power herein granted, or denial of the right of due process." *Id.*

Although the first two assignments of error concern evidentiary rulings by the district court, we pretermit any discussion on those issues in light of our disposition of Plaintiff's third assignment of error. Accordingly, we will proceed to that assignment. As Plaintiff raises both procedural and substantive issues in that assignment, we will address the procedural issue first.

### *Validity of the Appeal to the Parish Council*

Plaintiff first argues that the district court acted unreasonably in failing to find that no valid appeal was taken from the Hearing Examiner's decision and by failing to find that the Commission's decision granting preliminary plat approval was a final decision not subject to appeal. Plaintiff argues that absent an appeal by a person with standing, a Hearing Examiner's decision, as approved by the Commission, "is final for purposes for issuance of a building permit." It further argues that even if the Hearing Examiner's decision had been appealed, the decision by the Commission from that appeal is still a final judgment and not subject to review by the Parish Council. We disagree.

The Parish Council, as the governing authority for the Parish, is authorized by both the Louisiana Constitution and LCG's Home Rule Charter to review Commission decisions. La.Const. art. 6, § 17; LCG Home Rule Charter § 4-10(H) (January 2020). Moreover, the appellate procedure applicable to Commission

11

decisions "applies to any appeal of any **Planning and Zoning Commission action** concerning the approval or denial of a proposed subdivision." LDC § 89-69(a)(1). The procedure further sets forth the time for filing an appeal "from the approval, denial or other final action of the appropriate Planning and Zoning Commission with respect to an application[.]" LDC § 89-69(b)(1)(a). Accordingly, we find that any decision by the Commission approving a subdivision application is appealable to the Parish Council, including one that approves a Hearing Examiner decision or is rendered on appeal from such a decision.

While LCG asserts that the Commission's transfer of Plaintiff's plat application from the consent agenda to the regular agenda automatically converted it from a minor plat to a preliminary plat, a plain reading of the LDC procedures applicable to either plat does not support this claim. LDC §§ 89-57, 89-60(e). Nonetheless, we recognize that during the "Development Review" section of the January 9 meeting, the Commission granted Plaintiff preliminary plat approval rather than "approval of the Hearing Examiner action[][,]" as it did for the items considered just prior to Plaintiff's application. However, we find that the outcome would remain the same no matter how Plaintiff's plat is classified.

We find that the Commission decision granting Plaintiff preliminary plat approval was appealable to the Parish Council as it was an action approving a proposed subdivision. The same would hold true for a decision rendered from an appeal of a Hearing Examiner decision, as it would still be an action approving or denying a proposed subdivision. Accordingly, we find no legal error in the district court's failure to find that the Commission's decision was final and not subject to appeal to the Parish Council.

*Appeal of Parish Council Decision*

Plaintiff next asserts that the Parish Council acted arbitrarily, capriciously, unreasonably, and in violation of its due process rights in denying its use by right to construct a store in an unincorporated area of the Parish. It further argues that the Parish Council acted unreasonably in denying its plat application because it failed to comply with the plan and because the Parish Council wanted to preserve the subject neighborhood as residential. Finally, Plaintiff argues that the Parish Council acted unreasonably by expanding the issues considered on appeal beyond those specified by Mr. McDaniel.

The subdivision processes implemented by the LDC are intended "to assure the orderly development of property and reduction of blight in existing neighborhoods within the City of Lafayette and unincorporated Lafayette Parish." LDC § 89-55(b)(1). However, there exists no "inherent right to subdivide property or to create building sites except as consistent with the public health, safety and welfare of the entire community." *Id.* The review of and a decision approving a plat application "shall include an evaluation of all aspects that might relate [to] this decision, including but not limited to: infrastructure capacity or impact, current growth management policies, traffic congestion, and environmental impacts." *Id.* Accordingly, all plat applications are referred for review and comment by the appropriate departments and agencies, including LCG's Departments of Public Works and Traffic, Road, and Bridges; the City of Lafayette's Lafayette Utilities System and Fire Department; the applicable private or public utilities; the DPD; and "[a]ny other agencies or departments who may provide relevant comments about the proposed subdivision." LDC §§ 89-57(e)(1), 89-60(e)(1).

13

A subdivision plat is obtained through either an application for preliminary plat or via an application for minor plat. "Preliminary plat approval is required for all unplatted property that has not been approved by the appropriate Planning and Zoning Commission or before a building permit can be obtained."[6] LDC § 89-57(a). Under certain conditions, expedited approval of a minor plat may be obtained administratively from a Hearing Examiner. La.R.S. 33:113.1; LDC § 89-60(e)(6). Approval of either type of plat application will be granted if it "complies with all applicable requirements of" the LDC and "is consistent with the Comprehensive Plan." LDC §§ 89-57(f)(1), 89-60(f).

Although the platting process is only used to establish a lot's boundaries, the Parish Council granted Mr. McDaniel's appeal based solely on Plaintiff's intended construction and operation of a store on its property. This was despite the fact that a store is an allowed use in the unincorporated area of the Parish as long as Plaintiff satisfies the buffer and building standards found in Article 3 of the LDC. LDC § 89-6(a).[7] Thus, we find that Plaintiff was seeking a use by right as a store is an allowed use and its plat application was approved subject to the modifications imposed by the Commission. That Plaintiff was seeking a use by right was admitted to by Defendants' counsel during oral argument before this court.

The jurisprudence pertaining to a "use by right" was set forth in *Dorsey Development DG, L.L.C. v. Tangipahoa Parish Council-President Government*, 24-

---

[6] The procedure for obtaining a preliminary plat application is found in § 89-57, which is located in "Article 4. Procedures" of the LDC, under "Division 4. Subdivision Processes[.]"

[7] Although § 89-6(a) states under District "A" Agricultural that "*[b]uffer and building design requirements of Article 4 apply if the area is not zoned*[,]" we note the LDC's development standards are found in Article 3 rather than Article 4.

14

271, pp. 17–18 (La.App. 1 Cir. 10/3/24), __ So.3d __, __ (footnotes omitted), as follows:

> Where, as here, a property owner seeks to use his or her land in compliance with the applicable zoning, requiring no variances or special uses, and conforming to every modification imposed by law, that property owner is seeking to exercise his or her "use by right." *Honeybee Holdings, LLC v. St. Tammany Parish Zoning Commission*, 2023-1051, p. 14, n. 8 (La.App. 1 Cir. 5/31/24), [391] So.3d [690], [701]. In a situation when a landowner seeks a use by right, the use by right should be presumptively valid and approved. *Id.*
>
> A legislative body's decision to deny a use by right, in compliance with the applicable zoning ordinances, is subject to strict scrutiny, not the normal standard of broad discretion applied to variance cases. *Zachary Housing Partners, L.L.C. v. City of Zachary*, 2012-1952, p. 4 (La.App. 1 Cir. 10/10/13), 185 So.3d 1, 4, *writ denied*, 2013-2615 (La. 2/7/14), 131 So.3d 864. The reviewing court does not consider whether the trial court manifestly erred in its findings, but whether the legislative body acted arbitrarily, capriciously, or with any calculated or prejudicial lack of discretion. The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. *Zachary Housing Partners, L.L.C.*, 2012-1952 at pp. 4-5, 185 So.3d at 4.
>
> Additionally, while a legislative body may take into account certain factors affecting the public, such as public safety, health, and general welfare, in considering a use by right application, those concerns must be legitimate public concerns and supported by evidence in order to meet the heightened burden imposed on the legislative body in a use by right situation. See *Falcon v. Parish of Jefferson*, 2022-526, p. 12 (La.App. 5 Cir. 6/14/23), 367 So.3d 857, 865-66.

After reviewing the Parish Council's decision pursuant to the strict scrutiny standard of review, we find that it acted unreasonably in denying Plaintiff's use by right based on its finding that the plat application failed to comply with the plan. Although Mr. Carlson admitted that the plat application complied with the LDC, he and Mr. Guilbeau both concluded that the Commission failed to consider the plan before granting preliminary plat approval.

Lafayette Development Code Section 89-1 states that the LDC implements LCG's plan by "[r]egulating subdivision plats and development in the City of

15

Lafayette and the unincorporated areas of" the Parish and by "[e]stablishing zoning regulations in the City of Lafayette." Specifically, the LDC is found to be consistent with the plan by "[t]he Lafayette Parish Planning Commissions, the Lafayette City Planning and Zoning Commissions, the Lafayette City Council and the Lafayette Parish Council[.]" LDC § 89-4(a). Moreover, the LDC's own rules of interpretation provide that it "establishes the minimum requirements to promote the public safety, health, convenience, comfort, morals, prosperity, and general welfare." LDC § 89-150(a)(1). Therefore, a plat that complies with the applicable requirements of the LDC is by that very fact consistent with the plan and presumed to satisfy the minimum requirements pertaining to "public safety, health, convenience, comfort, morals, prosperity, and general welfare." *Id.* As it is undisputed that Plaintiff's plat application complied with the LDC, the Parish Council acted unreasonably in finding that it did not comply with the plan.

The Parish Council further acted unreasonably by effectively zoning Plaintiff's property as residential despite its location in an unincorporated area of the Parish. The only property subject to zoning regulations is that located in the City of Lafayette, with the unincorporated areas of the Parish only subject to the LDC's regulations pertaining to subdivision plats and development. LDC § 89-1. Accordingly, we find that the neighborhood where Plaintiff's property is located is not subject to zoning absent annexation by the City of Lafayette through either petition and election or by ordinance. La.R.S. 33:151; 33:171. Thus, the Parish Council acted in contravention of the LDC and in violation of Plaintiff's due process rights.

We point out that the facts at issue differ from those in two recent decisions wherein we upheld a governmental subdivision's denial of preliminary plat

16

approval. In *Glomax, LLC v. Lafayette Consolidated Government*, 24-183 (La.App. 3 Cir. 11/27/24), __ So.3d __, the plaintiff was not seeking a use by right as it requested a waiver of the LDC's prohibition against double-fronted lots. Thus, the city council's denial was not subject to strict scrutiny. This court held that the denial of the plat application was valid because there was a legitimate public concern that a double-fronted lot would cause an increase in traffic.

In *B&A Holdings, LLC v. City of Natchitoches*, 23-620 (La.App. 3 Cir. 3/6/24), 382 So.3d 471, the property at issue was located in a flood zone, and there was public opposition to development of the property based on the periodic, serious flooding experienced in the area. Although normally required, the plaintiff's application to subdivide its property failed to indicate sewer, water line, and drainage ditch locations or include proposed plans for drainage and sewage disposal. As flooding was a legitimate public concern, this court affirmed the city council's denial, finding that it was based on a legitimate public concern that the area's existing flooding problems would be exacerbated by any proposed construction on the subdivided property.

Furthermore, while we are cognizant of the concerns that were raised in opposition to Plaintiff's store, we note that its plat was approved subject to conditions addressing the flood and drainage issues, which issues will be further addressed during the development stage of this project. It is further evident that LCG is already aware of the heavy traffic experienced by this community as evidenced by the roundabout being built at the intersection of Fortune and Chemin Metairie Roads. Furthermore, although residents complained that the proposed store would decrease property values and increase crime, these complaints are mere speculation and unsupported by evidence. Regarding claims that the store would environmentally

17

impact the neighborhood, we note that no applicant seeking a minor or preliminary plat with the intention of building a store is required by the LDC to perform an environmental impact study prior approval being granted. By singling Plaintiff out on this issue, we find that there has been a non-uniform application of LCG's land use and development regulations by the Parish Council. La.Const. art. 6, § 17; *See also D'Argent Props., LLC v. City of Shreveport*, 44-457 (La.App. 2 Cir. 6/24/09), 15 So.3d 334, *writ denied*, 09-1726 (La. 11/6/09), 21 So.3d 308.

As the Parish Council has failed to overcome the presumption that Plaintiff's use by right was valid and should be approved, we find that it acted arbitrarily and capriciously and in violation of Plaintiff's due process rights by denying its plat application. Based on these findings, we need not address whether the Parish Council acted unreasonably by expanding the issues considered on appeal.

## DECREE

For the foregoing reasons, the district court judgment, affirming the decision of the Parish Council granting the appeal and denying Singh Signature Stores, Inc.'s plat application, is reversed. We hereby render judgment reinstating the decision of the Lafayette Parish Planning Commission, granting preliminary plat approval to Singh Signature Stores, Inc. The matter is remanded to the district court for further proceedings on Singh Signature Stores, Inc.'s remaining claims. Costs of the appeal are assessed to the defendants, Parish of Lafayette and Lafayette City-Parish Consolidated Government, in the amount of $6,073.46. La.R.S. 13:5112(A).

**REVERSED; RENDERED; AND REMANDED.**

18